RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0231p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

JOHN M. BERRY, JR.,
　　　*Plaintiff-Appellant/Cross-Appellee*,

　　　*v.*

MICHAEL J. SCHMITT, in his official capacity
as Chair of the Kentucky Bar Association
Inquiry Commission,
　　　*Defendant-Appellee/Cross-Appellant.*

Nos. 11-5456/5515

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 3:09-cv-60—Danny C. Reeves, District Judge.

Argued: April 13, 2012

Decided and Filed: July 27, 2012

Before: DAUGHTREY and ROGERS, Circuit Judges; ZOUHARY, District Judge.[*]

_____

## COUNSEL

**ARGUED:** William E. Sharp, AMERICAN CIVIL LIBERTIES UNION OF KENTUCKY, Louisville, Kentucky, for Appellant/Cross-Appellee. Mark R. Overstreet, STITES & HARBISON, PLLC, Frankfort, Kentucky, for Appellee/Cross-Appellant. **ON BRIEF:** William E. Sharp, AMERICAN CIVIL LIBERTIES UNION OF KENTUCKY, Louisville, Kentucky, David B. Tachau, Katherine E. McKune, TACHAU MEEK PLC, Louisville, Kentucky, for Appellant/Cross-Appellee. Mark R. Overstreet, STITES & HARBISON, PLLC, Frankfort, Kentucky, Bethany A. Breetz, STITES & HARBISON, Louisville, Kentucky, for Appellee/Cross-Appellant. J. Joshua Wheeler, THE THOMAS JEFFERSON CENTER FOR THE PROTECTION OF FREE EXPRESSION, Charlottesville, Virginia, for Amicus Curiae.

　　　ROGERS, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. ZOUHARY, D. J. (pp. 19–20), delivered a separate concurring opinion.

_____

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

———————————

## OPINION

———————————

ROGERS, Circuit Judge.   The balance between an attorney's right to free political speech and a state's right to regulate attorney conduct is delicate.   States often successfully navigate the tension between these competing interests, permitting open critique while protecting the viability and vitality of judicial institutions.   One of the ways that states do this is through ethical rules that prohibit attorneys from making false or reckless statements about judicial officers.   Sometimes, however, the balance is upset and the state applies its rules in a way that impinges upon the free interchange of ideas that is vital to self-government.   This is especially problematic when the speech is made by attorneys, who are often the citizens best situated to criticize government abuse.

This First Amendment case arose when the Kentucky Bar Association (KBA) issued a written warning against an attorney for criticizing a quasi-judicial state legislative ethics commission.  John Berry, an attorney, attended a public session of the Kentucky Legislative Ethics Commission regarding alleged fund-raising violations by Senate President David Williams.   Berry was unhappy with how the session was conducted—the Commission closed the session to the public but allowed Williams to remain—and Berry drafted a letter expressing his displeasure.  The letter stated that the Commission's procedures could cause the public to think that the "deck was stacked." The Commission complained of the letter to the Kentucky Bar Association's Inquiry Commission.   After investigating the matter, the Inquiry Commission issued a letter warning Berry that his conduct violated Kentucky Rule of Professional Conduct 8.2(a), and advising him to refrain from similar conduct in the future.  After exhausting his state remedies, Berry brought this First Amendment challenge to Rule 8.2(a).  The district court granted summary judgment for the KBA.  This decision was improper because Rule 8.2(a) is unconstitutional as applied to Berry's speech.

# I

In 2007, the Kentucky Legislative Ethics Commission received a complaint regarding the fund-raising of Kentucky Senate President David Williams. The Commission conducted a hearing regarding the allegations, which Berry attended. At the hearing, the Commission called an executive session and excluded the media, Berry, and other members of the public during its inquiry into the allegations, but allowed Williams to be present. After hearing the evidence, the Commission issued an order dismissing the complaint against Williams.

On October 5, 2007, Berry wrote a letter to the Commission criticizing the Commission's disposition of the Williams matter:

> The inquiry was conducted entirely behind closed doors with the exception of Senator Williams who was allowed to be present throughout the preliminary inquiry. The exclusion of the pub[l]ic and the media was enough to arouse suspicion, but the exclusion of the complainant (except for a brief appearance as a witness) coupled with the inclusion of the alleged violator throughout the proceeding gave cause for some to speculate that the deck was stacked and the Senator would be exonerated. I was not, and am not, willing to go that far, but I do believe that your Order . . . that exonerated him, was contrary to the undisputed evidence that was presented.

Berry disseminated copies of his letter to the Commission, members of the public, and the media.

In November 2007, the Inquiry Commission of the Kentucky Bar Association began investigating whether Berry's letter violated the Kentucky Rules of Professional Conduct. The Inquiry Commission focused on Rule of Professional Conduct 8.2(a), which provides that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer." Ky. Sup. Ct. R. 3.130(8.2(a)). Berry denied any violation.

Following a lengthy investigation, the Inquiry Commission issued a warning letter asserting that Berry's conduct violated Rule 8.2(a) "by publicly implying that the

Legislative Ethics Commission did not conduct its review appropriately." The letter
continued:

> The Inquiry Commission voted to issue this warning letter, in connection
> with its Order of Dismissal, as provided by SCR 3.185, in lieu of either
> a Private Admonition or a Charge. This letter is to advise you in the
> future to conform your conduct to the requirements of the Rules of
> Professional Conduct.
>
> Pursuant to SCR 3.185, the issuance of this warning letter does not
> constitute a record of formal discipline. The file will be destroyed after
> one (1) year.

The disciplinary complaint against Berry was dismissed. Berry did not appeal because
Kentucky does not provide for an appeal of the Inquiry Commission's findings.

Berry filed this action in November 2009, alleging that he wished to engage in
further criticism of the Commission's investigation of David Williams. Berry alleged,
however, that he has refrained from such speech because he now fears professional
discipline. Berry contended that the warning letter contained threats of enforcement that
deprived him of his First and Fourteenth Amendment rights. He asked the district court
to declare that Rule 8.2(a) is unconstitutional, facially and as applied. Berry also
requested injunctive relief preventing the KBA from enforcing the rule against him "for
any future distribution of his October 5, 2007 letter" or "future speech [that is]
substantially similar."

The district court granted the KBA's motion for summary judgment. The district
court held that the *Rooker-Feldman* doctrine barred Berry's as-applied challenge. *Berry
v. Schmitt*, No. 03:09-60-DCR, 2011 WL 1376280, at *2–4 (E.D. Ky. April 12, 2011).
Turning to the facial challenge, the district court held that Berry had standing and that
his claims were ripe, but that Rule 8.2(a) did not reach a substantial amount of protected

speech.  *Id.* at \*7-8.  Berry filed this timely appeal and the KBA filed a cross-appeal challenging Berry's standing.[1]

## II

### A.     Article III Standing

The district court properly determined that Berry had standing to pursue his pre-enforcement challenge to Rule 8.2(a) because he alleged an injury in fact.  Where a plaintiff alleges that state action has chilled his speech, "it is not necessary that [he] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974).  However, a plaintiff must still satisfy the injury-in-fact requirement by showing: (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute" and (2) "a credible threat of prosecution thereunder."  *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).  Berry has met both requirements.

Berry alleges that his intended conduct is "affected with a constitutional interest" and yet is proscribed by the KBA rules.  Berry "remains dissatisfied with the [Commission]'s resolution of the inquiry into Senate President David Williams's fundraising activities in 2007" and "wishes to distribute his October 5 letter as a means of expressing his disagreement with (and opposition to) the manner in which the [Commission] conducted its inquiry and the decision it reached."  The parties appear to agree that Berry has a constitutional interest in such political speech.

There is little question that Rule 8.2(a), as construed by the KBA in its letter, proscribes Berry's intended conduct.  Berry alleges that he intends to engage in speech identical—or substantially similar—to the speech contained in his October 5 letter.  The

---

[1]The cross-appeal was not necessary because the KBA prevailed below.  As the Seventh Circuit noted, "Cross-appeals for the sole purpose of making an argument in support of the judgment are worse than unnecessary" because such appeals needlessly delay and complicate the proceedings. *Jordan v. Duff & Phelps, Inc.*, 815 F.2d 429, 439 (7th Cir.1987).  Of course, the KBA may defend the judgment in its favor on grounds rejected by the district court. *See United States v. True*, 250 F.3d 410, 419 (6th Cir. 2001).

KBA's warning letter "unequivocally stated that," by circulating the October 5 letter, "Berry had violated the rule and essentially cautioned him not to let it happen again." *Berry*, 2011 WL 1376280, at *5. It takes no great leap of logic to deduce that if Berry engages in speech identical or substantially similar to that contained in the October 5 letter, such conduct similarly would violate Rule 8.2(a) regardless of whether he is punished for such conduct.

Moreover, Berry has shown a credible threat of enforcement. This court's reasoning in *Morrison v. Board of Education of Boyd County*, 521 F.3d 602 (6th Cir. 2008), is instructive. In *Morrison*, a high school student allegedly refrained from expressing his anti-homosexual beliefs because he feared punishment under his school's anti-bullying policy. *Id.* at 607. We held that "subjective chill" alone—without some other indication of imminent enforcement—did not constitute injury in fact. *Id.* at 608. Because the student had no indication from the school whether he would be punished, he did not have an actual injury. *Id.* at 609–10.

Unlike the student in *Morrison*, Berry received what amounts to a credible threat of enforcement. Berry seeks to engage in speech similar to that contained in his October 5 letter, but the last time Berry engaged in such speech, he "was warned by the Inquiry Commission that his statement violated Rule 8.2(a) and that 'in the future,' he should 'conform [his] conduct to the requirements of the Rules of Professional Conduct.'" *Berry*, 2011 WL 1376280, at *5 (alterations in original). Berry had sufficient reason to fear future discipline, as "the warning letter unequivocally stated that Berry had violated the rule and essentially cautioned him not to let it happen again." *Id.* Although Berry was not disciplined for his circulation of the October 5 letter, the warning letter implied a threat of future enforcement that elevated the injury from subjective chill to actual injury.

The KBA's "after-the-fact assurances did not diminish the threat of enforcement." *Id.* The KBA contends that "the rule was not enforced against Berry (the complaint was dismissed), and the statement in the warning letter to conform his conduct to the rules does nothing other than refer to the duty of all attorneys."

However, as discussed above, Berry was warned that his conduct violated Rule 8.2(a) and was instructed to avoid such conduct in the future. This warning alone more than subjectively chilled Berry's speech. Further, the KBA reaffirmed the threat of future enforcement in a "Supplemental Warning Letter." This supplemental letter, written in response to Berry's complaint in this action, made clear that the KBA believed that Berry's statements in his October 5 letter "implicate this rule [8.2(a)], *and statements which violate this rule should be avoided*." This confirmed that Berry's statements violated the rule, and the letter implicitly threatened future enforcement. Finally, the supplemental letter indicates that the Inquiry Commission had refrained from issuing more severe punishment because Berry hedged his criticism: "I was not, and am not, willing to go that far." Tellingly, the KBA now disavows this position in its reply brief, arguing that Berry's hedge does not mitigate the severity of his actions. Given the current KBA position, it would be reasonable for Berry not to rely on the KBA's promises regarding future enforcement.

The KBA next argues that the Inquiry Commission ultimately dismissed the complaint against Berry, and the warning letter did not constitute a record of formal discipline. The warning letter, according to the KBA, was a final determination that prevents future punishment.

This argument fails upon review of the record and the letter itself, especially in light of the testimony of Reed Moore, the former president of the KBA and former defendant in this action. Moore testified that "it is possible" that the Inquiry Commission could decide that further dissemination of the October 5 letter warranted discipline beyond a warning.[2] The KBA admits that a subsequent Inquiry Commission would not be "even informed of the warning letter should an attorney commit a subsequent violation of the Kentucky Rules of Professional Conduct." The Commission could not withhold punishment based on a letter that it did not know existed.

---

[2]Moore was asked, "is it possible, as you are testifying then, Mr. Moore, that if Mr. Berry had sent his October 5, 2007 letter again, on March 17th, 2009 [the day after receiving the warning letter], he could have been found to have violated the rule again?" Moore answered "yes."

We are similarly unpersuaded by the KBA's argument that Berry should have sought further clarification of the KBA's position. Requiring a litigant to make repeated requests for clarification in this context is illogical. After Berry received two letters notifying him of the purported violation and implicitly threatening future discipline, it was quite clear what the KBA's position was on the issue. Even though not disciplined at the time, a reasonable attorney in Berry's position would have felt a credible threat of future enforcement.

Nor do we accept the argument that Berry is seeking an advisory opinion. The KBA contends that if the court reaches the issue, we would be issuing an advisory opinion because the KBA has yet to discipline Berry. This misses the point. The Supreme Court has long found claims to be cognizable when speech has been chilled by the threat of future enforcement. *See, e.g., Brown v. Entm't Merchants Ass'n*, 131 S. Ct. 2729, 2733 (2011). The injury here is not actual discipline, but rather chill caused by the threat of discipline.

## B.     Ripeness

For reasons similar to those discussed above, the district court properly concluded that Berry's claim is ripe. Three factors guide the ripeness inquiry: "(1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings." *Grace Community Church v. Lenox Twp.*, 544 F.3d 609, 615 (6th Cir. 2008) (internal quotations omitted). In the First Amendment context, we evaluate the likelihood of the harm factor by focusing on "how imminent the threat of prosecution is and whether the plaintiff has sufficiently alleged an intention to refuse to comply with the statute." *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002). As discussed above, Berry has shown an imminent threat of prosecution. Berry alleged an intention to engage in speech prohibited by the October 5 letter, as well as a reasonable fear that he would be punished for doing so. Moreover, the factual record is sufficiently developed—the issue presented is a legal one that does not require further factual

findings.  Finally, there is little benefit to the agency in waiting to adjudicate this until after enforcement, and little indication that the agency might further refine its determination regarding Berry's conduct.  By contrast, Berry is faced with a present quandary—speak now and risk punishment or forever hold his peace.  Taken together, these factors demonstrate that Berry's claim is ripe.

## C.     *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine does not bar Berry's claim because Berry's alleged injury was not caused by the warning letter.  The *Rooker-Feldman* doctrine bars lower federal courts from conducting appellate review of final state-court judgments because 28 U.S.C. § 1257 vests sole jurisdiction to review such claims in the Supreme Court.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005).  The doctrine, however, does not bar federal jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 293.  Instead, the doctrine applies only where a state-court loser initiates an action in federal district court, complaining of injury caused by a state court judgment, and seeks review and rejection of that judgment.  *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009).  We assume that Berry is a state-court loser, and that the KBA's Inquiry Commission is a state court for *Rooker-Feldman* purposes.  As the district court explained, the structure of bar regulation in Kentucky supports this assumption:

> Pursuant to the Kentucky Constitution, the state supreme court has jurisdiction over "admission to the bar and the discipline of members of the bar." Ky. Const. § 116.  The Inquiry Commission is appointed by the Chief Justice of the Kentucky Supreme Court, and its function is "to promptly dispose of all complaints and matters referred to it." Ky. Sup. Ct. R. 3.140(1), (2).  The Commission examines the evidence and determines whether it warrants only informal disposition, see Ky. Sup. Ct. R. 3.185, or whether probable cause exists for a charge to be filed. See Ky. Sup. Ct. R. 3.190.  Thus, the Commission must "investigate, declare, and enforce 'liabilities as they [stood] on present or past facts and under laws supposed already to exist'"—in other words, it must engage in a judicial inquiry. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 479 (1983).

*Berry*, 2011 WL 1376280, at *3.

Further, we assume that the warning letter was a state court decision, even though it was not a formal judgment or order. For *Rooker-Feldman* purposes, "the form of the proceeding is not significant. It is the nature and effect which is controlling.'" *Feldman*, 460 U.S. at 482 (internal quotations omitted). To determine whether a state court action is a "decision," we evaluate whether the state court addressed the claim "on the merits." *Id.* at 478 (internal quotation omitted). We have previously held that law-practice determinations by bar associations are state court decisions for the purposes of the *Rooker-Feldman* doctrine, even if no hearing is held and there is no opportunity to appeal. *Raymond v. Moyer*, 501 F.3d 548, 553–54 (6th Cir. 2007). Here, the record demonstrates that the Inquiry Commission considered a complaint against Berry, evaluated evidence, and decided that the case warranted informal disposition. Thus, we assume for the sake of argument that the full consideration of the merits makes the warning letter a state court decision.

The warning letter, however, is not the source of Berry's alleged injury. We determine "whether *Rooker-Feldman* bars a claim by looking to the 'source of the injury the plaintiff alleges in the federal complaint.'" *Evans v. Cordray*, 424 F. App'x 537, 538 (6th Cir. 2011) (quoting *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006)). *Rooker-Feldman* does not address potential conflicts between federal and state court orders. That is the purview of the doctrines of comity, abstention, and preclusion. Instead, *Rooker-Feldman* focuses on whether the state court decision caused the injury: "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury . . . then the plaintiff asserts an independent claim." *McCormick*, 451 F.3d at 393.

Berry's request for relief demonstrates that the warning letter is not the source of his injury. A court cannot determine the source of the injury "without reference to [the plaintiff's] request for relief." *Evans*, 424 F. App'x at 539. Berry seeks declaratory and injunctive relief to prevent future enforcement by the KBA, the threat of which is

currently chilling his speech. Berry does not request relief from the warning letter itself. For example, he is not trying to get the warning letter expunged or to get the decision overturned. Nor is he challenging the process by which the warning letter was issued. Instead, Berry seeks relief that would allow him to engage in future protected speech. This type of claim falls outside the purview of *Rooker-Feldman*.

In similar cases, we have declined to apply *Rooker-Feldman* to claims for prospective relief. For example, in *Hood v. Keller*, 341 F.3d 593 (6th Cir. 2003), a plaintiff had been convicted of using the Ohio Statehouse grounds without a permit. *Id.* at 596. In the subsequent civil suit, the plaintiff challenged the constitutionality of the permit requirement, and sought relief allowing him to reenter the grounds without a permit. *Id.* We held that *Rooker-Feldman* did not apply because the plaintiff did not "demand to set aside the verdict or the state court ruling," but instead "[sought] injunctive and declaratory relief prohibiting" future enforcement. *Id.* at 598. In *Evans*, 424 F. App'x 537 at 539–41, a plaintiff had been declared a vexatious litigant during a divorce proceeding, a status that prevented him from filing state-court motions without leave. *Id.* at 538. The state court denied two of his motions on that basis. *Id.* The plaintiff sought a federal injunction preventing the future application of Ohio's vexatious litigator statute. *Id.* at 540. We held that *Rooker-Feldman* did not apply because the plaintiff sought only prospective relief from future enforcement. *Id.* Here, like the plaintiffs in *Hood* and *Evans*, Berry asks solely for prospective relief. Were Berry to win, the warning letter would not be overturned. The only relief would be to prohibit future enforcement, making *Rooker-Feldman* inapplicable.

This conclusion is reinforced by *Fieger v. Ferry*, 471 F.3d 637 (6th Cir. 2006). The plaintiff-attorney, Geoffrey Fieger, had engaged in an "acrimonious and well-publicized dialogue" with "several justices of the Michigan Supreme Court." *Id.* at 639 (internal quotations omitted). Fieger alleged that the justices had acted improperly by failing to recuse from Fieger's subsequent cases. *Id.* Fieger sought a declaration that the past failures to recuse were unconstitutional and an injunction compelling recusal in future cases. *Id.* at 644–45. We held that *Rooker-Feldman* barred Fieger's claims

regarding the justices' failure to recuse from past cases. *Id.* at 644. However, Fieger's challenge to "Michigan's recusal rule as applied in future cases" was not barred because it was independent of the state court judgment and forward-looking. *Id.* at 646.

The *Fieger* court's distinction between backward- and forward-looking claims makes clear that *Rooker-Feldman* does not apply to Berry's claims. Berry, like the plaintiff in *Fieger*, challenges the constitutionality of Rule 8.2(a) as it will be applied in future cases. Although the warning letter demonstrates that the KBA would likely apply Rule 8.2(a) in future cases—and therefore, bears on the ripeness of the claim—Berry is not seeking relief from the letter. The letter remains on Berry's file pending the resolution of this litigation, and Berry has not requested that the court compel its removal. In this light, *Rooker-Feldman* does not apply to Berry's forward-looking claims.

The KBA's reliance on *Raymond v. Moyer*, 501 F.3d 548, 551 (6th Cir. 2007), does not compel a different conclusion. In *Raymond*, a nonresident attorney challenged the denial of his application for admission to the Ohio bar without examination. *Id.* at 550. The attorney alleged that the denial of his application violated his constitutional rights, and sought an injunction requiring his future admission. *Id. Rooker-Feldman* barred this claim because the attorney was seeking a declaration that the state court decision was wrong, and an injunction reversing the denial. *Id.* at 551–54. In contrast, Berry is not seeking to overturn a state court decision. Berry seeks injunctive relief protecting him from punishment for speech in which he has yet to engage.

Similarly, the KBA's reliance on *McCormick*, 451 F.3d at 394, is inapposite. In *McCormick*, we set forth a hypothetical to which *Rooker-Feldman* would apply:

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.

*Id.* at 394 (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 87–88 (2d Cir. 2005)). If the hypothetical father is successful, the decision of the state court would necessarily have to be overturned. In Berry's case, by contrast, the decision to issue the warning letter would not be reversed. The KBA could not punish future conduct, but the warning letter would not be expunged.

The KBA's reliance on *Lawrence v. Welch*, 532 F.3d 364, 370–71 (6th Cir. 2008), is also misplaced. *Lawrence* relied on ripeness—and not *Rooker-Feldman*—to dismiss the plaintiff's pre-enforcement claims.[3] In *Lawrence*, an attorney sued to compel the Michigan Bar Association, first, to overturn its decision not to admit him and, second, to issue him a license. *Id.* at 366–68. To the extent the attorney complained of the past denial of his bar application, we held that this claim was barred by *Rooker-Feldman*. *Id.* at 369. However, to the extent the attorney asked the court to enjoin the rejection of his future bar applications, we denied the claim on ripeness grounds. *Id.* at 373 (Sutton, J., concurring, in which Rogers, J., joined). The court reasoned that it could not know if the attorney would file a subsequent bar application, how the attorney would answer future questions during future admission interviews, or whether a subsequent application would be rejected by the Michigan Board of Law Examiners. *Id.*

The KBA's remaining arguments are without merit. Without citation, the KBA asserts that "[m]ost of the post-*Exxon* appellate cases holding that *Rooker-Feldman* does not apply are cases where the state and federal actions are, or could have been, parallel." Even if we were to accept this assertion, it does not follow that parallel proceedings are a prerequisite to avoiding the *Rooker-Feldman* bar. Any number of factors could cause courts not to apply *Rooker-Feldman* to cases involving parallel proceedings at a higher rate, including the types of cases brought and the arguments made by litigants. The inference the KBA wishes this court to make is not supportable.

---

[3]The KBA misreads *Lawrence*, relying on the opinion of District Judge Bertelsman with regard to the pre-enforcement challenge. Judge Bertelsman's opinion was not the majority opinion with regard to the *Lawrence* attorney's request for prospective relief. *See Lawrence*, 532 F.3d at 373 (Sutton, J., concurring). Judge Sutton's concurrence was joined by Judge Rogers, giving that opinion controlling weight with regard to the prospective relief. *Id.*

The parties argue extensively whether or not the district court mistakenly applied an "inextricably intertwined" standard first articulated by Justice Marshall in *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring).  In the wake of *Exxon*, this court has explicitly backed away from that standard, *see, e.g., McCormick*, 451 F.3d at 394, but we need not reach the issue.  Our present review, without more, shows that the "source of the injury" is the threat of future enforcement, and not the prior state court decision.

## D.    As-Applied Challenge

Although the district court did not address the merits of the as-applied challenge, we reach that issue because "[t]he usual judicial practice is to address an as-applied challenge before a facial challenge . . . because this sequencing decreases the odds that facial attacks will be addressed unnecessarily." *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 327–28 (6th Cir. 2009) (en banc) (internal quotations omitted).

As a preliminary matter, it is not necessary for us to resolve whether the highly protective defamation standard applies in this case, because we ultimately determine below that Berry's speech may not be sanctioned even under a less demanding standard. Both parties recognize that Berry has a right to engage in speech involving "governmental affairs" and "the manner in which government is operated or should be operated, and all such matters relating to political processes" under *Mills v. State of Alabama*, 384 U.S. 214, 218–19 (1966).  Berry contends that he can be punished only if his statements are knowingly false or made with reckless disregard of their falsity, applying the defamation standard articulated in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).  While "[j]udges should hesitate to insulate themselves from the slings and arrows that they insist other public officials face," *Matter of Palmisano*, 70 F.3d 483, 487 (7th Cir. 1995), "there are significant differences between the interests served by defamation law and those served by rules of professional ethics," *Standing Comm. v. Yagman*, 55 F.3d 1430, 1437 (9th Cir. 1995).  Defamation is essentially a private action that seeks to compensate individuals who are injured by false or reckless speech. *Id.*  The ethical rules, by contrast, do not compensate judges or "shield [them] from

unpleasant or offensive criticism, but [are designed] to preserve public confidence in the fairness and impartiality of our system of justice." *Id.* Because of this distinction, ethics rules can permissibly reach speech that defamation suits cannot. The *New York Times* standard is therefore arguably too restrictive to apply in all its strength to court-enforced ethical obligations. The Ninth Circuit has compellingly articulated a more appropriate test in *United States District Court v. Sandlin*, 12 F.3d 861, 867 (9th Cir.1993): a court should "determine what the reasonable attorney, considered in light of all his professional functions, would do in the same or similar circumstances." "The inquiry focuses on whether the attorney had a reasonable factual basis for making the statements, considering their nature and the context in which they were made." *Yagman*, 55 F.3d at 1437. Because Berry's statements cannot be sanctioned even under this test, it is not necessary to resolve definitively whether the stricter *New York Times* test applies.

The standard articulated in *Sandlin* gains context from other First Amendment protections, including the maxim that truth is a defense. *See Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). With this in mind, as the Ninth Circuit has held, an attorney's "statements impugning the integrity of a judge may not be punished unless they are capable of being proved true or false; statements of opinion are protected by the First Amendment unless they 'imply a false assertion of fact.'" *Yagman*, 55 F.3d at 1438 (9th Cir. 1995) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990)). Even seemingly factual statements "are protected by the First Amendment if they cannot reasonably be interpreted as stating actual facts about their target." *Id.*

With these principles in mind, it is evident that the KBA acted unconstitutionally. In the October 5 letter, Berry stated in pertinent part:

> The inquiry was conducted entirely behind closed doors with the exception of Senator Williams who was allowed to be present throughout the preliminary inquiry. The exclusion of the pub[l]ic and the media was enough to arouse suspicion, but the exclusion of the complainant (except for a brief appearance as a witness) coupled with the inclusion of the alleged violator throughout the proceeding gave cause for some to speculate that the deck was stacked and the Senator would be exonerated. I was not, and am not, willing to go that far, . . . .

This statement is a mixture of assertions of fact and expressions of opinion. Much of this excerpt—the portion discussing the exclusion of the public and media from the inquiry, Senator Williams's presence, and exclusion of the complainant—consists of assertions that describe objectively verifiable matters. Had the KBA proven that any of those facts was untrue, Berry's assertions could have formed the basis for discipline. The KBA, however, appears to concede that these factual allegations are true.

The remainder of Berry's statement—conveying the public's belief that the "deck was stacked"—is opinion protected by the First Amendment.[4] An opinion can "be the basis for sanctions only if it could reasonably be understood as declaring or implying actual facts capable of being proved true or false." *Yagman*, 55 F.3d at 1438–39 (citing *Milkovich*, 497 U.S. at 21)). An opinion relies on implied facts where a speaker utters an opinion without providing the underlying factual basis. Take, for example, a statement by A to B, "'I think [C] must be an alcoholic.' A jury might find that this was not just an expression of opinion but that it implied that A knew undisclosed facts that would justify this opinion." *See* Restatement (Second) of Torts § 566, cmt. c, illus. 3. If A has no factual basis to support the assertion, then the statement would be actionable even if couched as A's opinion. *See Yagman*, 55 F.3d at 1439. On the other hand, a statement based on fully disclosed facts is only actionable where the "facts are themselves false and demeaning." *See id.* at 1439. For example, if A told B:

> "C moved in six months ago. He works downtown, and I have seen him during that time only twice, in his backyard around 5:30 seated in a deck chair with a portable radio listening to a news broadcast, and with a drink in his hand. I think he must be an alcoholic." The statement indicates the facts on which the expression of opinion was based and does not imply others. These facts are not defamatory and A is not liable for defamation.

Restatement § 566, cmt. c, illus. 4. The rationale for this dichotomy is that when facts are merely implied, a listener is unable to assess the basis for that opinion. Where the underlying facts are fully revealed, however, "readers are free to accept or reject the

---

[4]The KBA offers no evidence challenging the existence of the public opinion. Therefore, the assertion that the opinion existed could not have been the basis of punishment.

author's opinion based on their own independent evaluation of the facts." *Yagman*, 55 F.3d at 1439.

In a case involving facts more egregious than those here, the Ninth Circuit held that the First Amendment protected an attorney's opinion because the statement in question also included the underlying facts that formed the basis of the opinion. *See id.* at 1440. In *Yagman*, an attorney was sanctioned by a judge and lashed out in the press. *Id.* at 1434. Among other things, the attorney told the press that the judge in question "has a penchant for sanctioning Jewish lawyers: me, David Kenner and Hugh Manes. I find this to be evidence of anti-[S]emitism." *Id.* The court concluded that this statement mixed fact and opinion. It was true that the three lawyers mentioned were Jewish and that the lawyers were all sanctioned by the judge in question. Because these statements were true, they could not be the basis of attorney sanction. *Id.* at 1438. The court held that the comment regarding anti-Semitism was an opinion that was based on stated facts: the religion of the attorneys and the fact sanctions occurred. *Id.* at 1440. Because the factual basis for the opinion was stated, "[r]eaders were free to form another, perhaps contradictory opinion from the same facts, as no doubt they did." *Id.* (internal citations and quotation marks omitted).

Here, Berry disclosed all of the facts underlying his opinion, all of which were true and non-defamatory. His opinion was based on stated facts: the exclusion of the public from the hearing, the inclusion of David Williams, and the exclusion of the complainant. Given this context, readers were free to form another, perhaps contradictory, opinion from the same facts.

Berry's opinion was not based on implied facts. The KBA contends that Berry's letter implied that the Commission illegally excluded the public from the hearing. Of course, contentions that adjudicatory bodies acted illegally are the staple of appellate briefs, and cannot without more constitute ethical violations. Berry's statements, in any event, did not necessarily imply that the Commission broke the law. Berry may well have known that the Commission was following its regulations, but believed that the regulations themselves were slanted in favor of accused legislators. Certainly, Berry

could not be punished for advocating a change in the law.  Even assuming that Berry believed that the Commission had broken the law, he provided the public with the facts upon which his opinion relied.  The public was free to investigate the Commission's procedures and draw its own conclusions.  The speaker is not required to provide a comprehensive legal analysis to support his every utterance.  For these reasons, Rule 8.2(a) was applied unconstitutionally.

We take no position on whether our analysis would be different if it involved an attorney speaking during judicial proceedings.  Once an attorney enters the courtroom, "whatever right to 'free speech' an attorney has is extremely circumscribed." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1071 (1991).  In those circumstances, an attorney cannot "seek refuge within his own First Amendment right of free speech to fill a courtroom with a litany of speculative accusations and insults which raise doubts as to a judge's impartiality."  *United States v. Cooper*, 872 F.2d 1, 3 (1st Cir. 1989).  This standard is inapplicable to Berry, who made his statements in a post-proceeding letter in his capacity as a private citizen rather than as an advocate.

We also take no position on the constitutionality of sanctioning a lawyer's profanity or threats directed against the courts, or other examples of a lawyer's unmitigated expression of disrespect for the law, even outside the courtroom.  Nothing like that was going on in this case.

## III

The district court's judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

---

**CONCURRENCE**

---

ZOUHARY, District Judge, concurring.  I concur with the majority opinion, but write separately to note that, while masked as implicating considerable First Amendment principles regarding attorney conduct, this case is really about a letter that has been in the public domain for nearly five years and that Berry allegedly wishes to re-circulate. Simply put, this case is more about stubborn Berry having the last word in his dispute with the KBA than about the First Amendment.  Indeed, even after the KBA reassured him that he would not be disciplined for future dissemination of the letter -- which admittedly has no effect on the justiciability of his claim -- Berry filed suit in federal court, claiming he still wants to publicly criticize the KBA's inquiry into Senate President Williams' fundraising irregularities.  At oral argument, Berry's counsel emphasized that Berry "wants to continue to speak in identical or substantially the same language, criticizing the Legislative Ethics Committee's handling of the preliminary inquiry."  Really?  This matter is old news and will not likely be pursued by Berry, or by anyone else.  After all, Berry's letter is hardly newsworthy.

The majority correctly recognizes that in a *Rooker-Feldman* analysis, courts must determine the "source" of a claimant's injury by looking at his or her request for relief. *See e.g.*, *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003); *Evans v. Cordray*, 424 F. App'x 537, 538 (6th Cir. 2011).  *Rooker-Feldman* bars only those actions which attack the relevant state court judgment itself -- not those seeking *prospective* relief.  And because Berry, like the plaintiffs in *Hood* and *Evans*, seeks only prospective relief, *Rooker-Feldman* does not apply and Berry may pursue his case.  There is, however, one notable difference between this case and *Hood* / *Evans*.

In both *Hood* and *Evans*, the plaintiffs needed relief in order to have their rights vindicated.  *See Evans*, 424 F. App'x at 540–41 (requiring federal court intervention to continue proceedings in his divorce case); *Hood*, 341 F.3d at 598 (requiring federal relief to preach and hand out religious tracts on Ohio's Statehouse grounds without future

impediments by permit requirements).  In this case, Berry needs no such relief.  As mentioned above, the KBA confirmed that Berry would not, and could not, be punished for further disseminating the letter.  His rights have already been vindicated and Berry may freely continue his campaign against the KBA's handling of the Williams matter.  Therefore, the only practical effect of Berry's requested relief is a federal court opinion implying that the state court judgment -- KBA's warning letter -- was incorrect.  This, of course, is precisely what *Rooker-Feldman* seeks to prevent.  *See Pieper v. Am. Arbitration Ass'n*, 336 F.3d 458, 460 (6th Cir. 2003); *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring) ("Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.").

While the law might be on Berry's side, his long-running feud with the KBA is exaggerated.