RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0125p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ROBERT MCKAY,

*Plaintiff-Appellant,*

*v.*

No. 15-1548

WILLIAM L. FEDERSPIEL; RANDY F. PFAU,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 1:14-cv-10252—Thomas L. Ludington, District Judge.

Argued: December 8, 2015

Decided and Filed: May 20, 2016

Before: STRANCH, DONALD, and LIPEZ, Circuit Judges.[*]

_____

## COUNSEL

**ARGUED:** Philip Lee Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Appellant. Karen M. Daley, CUMMINGS, MCCLOREY, DAVIS & ACHO, P.L.C., Livonia, Michigan, for Appellees. **ON BRIEF:** Philip Lee Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Appellant. Karen M. Daley, CUMMINGS, MCCLOREY, DAVIS & ACHO, P.L.C., Livonia, Michigan, for Appellees.

---

[*]The Honorable Kermit V. Lipez, Circuit Judge for the United States Court of Appeals for the First Circuit, sitting by designation.

1

---

**OPINION**

---

JANE B. STRANCH, Circuit Judge.   This case seeks to present significant issues concerning the ever-advancing march of technology and its role in courts and court facilities. The outcome of this case, however, is governed by the more particular issue of legal standing. Here, the chief judges of Saginaw County, Michigan issued a joint administrative order limiting the use of electronic devices in courtrooms and court-related facilities in the Saginaw County Governmental Center.   Robert McKay, a resident of neighboring Tuscola County who states that he wishes to record law enforcement officers' and judges' activities inside the Governmental Center, contends that the administrative order violates his federal constitutional rights.   Upon consideration of two sets of cross-motions for summary judgment, the district court concluded that McKay lacks standing to challenge the order prior to its enforcement.   For the reasons that follow, we **AFFIRM**.

## I.  BACKGROUND

The Saginaw County Governmental Center houses the Saginaw County Tenth Circuit Court, Probate Court, and Seventieth District Court, as well as various county legislative and executive offices, officials, and staff.   In August 2013, a subcommittee of the Saginaw County Board of Commissioners held a public meeting to discuss a proposed ordinance that would prohibit possession or use of electronic devices within the entire Governmental Center.   McKay attended the meeting and spoke against the ordinance.   The commissioners postponed making a decision, however, and the proposed ordinance never came up for further discussion or for a vote.

A few months later, on October 30th, the chief judges of the Tenth Circuit Court, Probate Court, and Seventieth District Court of Saginaw County issued a joint administrative order prohibiting unauthorized possession or use of certain electronic devices in "court related facilities" in the Governmental Center.   Specifically, the order—entitled "Electronic Device Policy"—provides that:

Except with a judge's permission, possession and/or use of the following devices is prohibited in court related facilities:

- audio and/or video recording and/or broadcasting devices
- camera/photographic devices
- electronic communication devices

(R. 35-2, PageID 477.)  The order defines "[c]ourt related facilities" as "the Saginaw County Circuit Court, District Court, and Probate Court (including the entire Juvenile/Family Court facility) courtrooms, court administrative offices, Friend of the Court offices, probation offices, and related common areas." (*Id.*)  And, under the order, "[e]lectronic communication devices" include "any device capable of communicating information from one person to another, including cell phones, pagers, two way radios, and laptop/notebook/tablet computers." (*Id.*)  The order further states that "[a]ll persons and property . . . entering court related facilities are subject to search by Sheriff Deputies for the purpose of enforcing this order" and that "[f]ailure to comply with this order may result in appropriate sanctions, including (A) being summarily barred or removed from court related facilities, and/or (B) imposition of a fine, including confiscation of any offending device, incarceration, or both for contempt of court." (*Id.* at PageID 477, 478.)

The Saginaw County Sheriff's Department—led by Sheriff William Federspiel—handles security at the Governmental Center.  Shortly after the Saginaw County judges issued the electronic device order, Lieutenant Randy Pfau circulated an internal memorandum to all Sheriff's Department personnel.  The memo explained:

Starting 16 December 2013 there will be no electronic recording device allowed (cell phone, camera, tablets, laptop computers, e[tc].) in the Saginaw County Courthouse by any members of the public.  If they are brought in they will be treated as any other restricted item and people will be able to take them back to their cars.

This is a policy that was established by the courts to stop the use of audio and video recordings being taken by the public and released to identify or harass witnesses.  This policy is already common in neighboring counties and has been for some time.  This policy will exclude the following persons:

1) Courthouse employees
2) Active members of the State Bar of Michigan
3) Law enforcement person[nel] acting in that capacity
4) Probation and Parole officers acting in that capacity
5) Representatives of media agencies authorized pursuant to AO 1989-1
6) Individuals granted ad hoc permission by an authorized judge.

Persons not wishing to comply with this order will be barred from the courthouse and those in violation inside the building may have their electronic device confiscated.

There is a permit that will be available for people coming for weddings and other official times that an electronic device may be needed (see attached permit sample). The permits will be available with the Circuit court or at the Deputies['] discretion. . . .

(R. 35-3, PageID 479–80.)

McKay filed the instant lawsuit in January 2014, arguing that the electronic device order is unconstitutional both on its face and as applied to him, and seeking injunctive and declaratory relief to prevent Federspiel and Pfau from enforcing the order. McKay's amended complaint alleges that he "seeks to exercise a right to record trial activities, the police and sheriff deputies inside and outside the courtroom in the performance of their official duties, the judge in the performance of his or her duties, and other activities of public interest" in the Saginaw County Governmental Center. (R. 75, PageID 1384.) He further contends that the electronic device order violates the First, Fourteenth, and Fifth Amendments to the United States Constitution. McKay does not allege that he has requested or been denied judicial permission to use a prohibited electronic device in the Governmental Center, nor does he allege any attempts to enter the building with such a prohibited device. Instead, McKay maintains that he "does not wish to be subject to contempt, confiscation of any electronic device (with or without private communications contained therein), fined not more than $7,500.00, and/or jail[ed] for 93 days for exercising his constitutional rights." (*Id.* at PageID 1383.)

The district court denied McKay's request for a preliminary injunction and later entered summary judgment against McKay with respect to his First Amendment claims after the parties

cross-moved for partial summary judgment.  After a second round of summary judgment briefing on the remaining counts, the court also entered summary judgment against McKay with respect to his Fourteenth and Fifth Amendment claims.  The district court held, among other things, that McKay failed to show any legally cognizable injury and therefore lacked constitutional standing to bring any of his asserted causes of action.  McKay timely appealed from both summary judgment orders.

## II.  STANDARD OF REVIEW

This court reviews de novo a district court's grant of summary judgment and dismissal for lack of standing.  *See Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 980 (6th Cir. 2012).  Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, we consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *See Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (en banc).  And where, as here, the parties filed cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

## III.  DISCUSSION

We address McKay's First Amendment claims and the first order for summary judgment before turning to his Fourteenth and Fifth Amendment claims and the second order for summary judgment.

A.      **First Amendment Claims**

McKay argues that he has a First Amendment right to record trial and other activities in the Saginaw County Governmental Center and that the electronic device order improperly infringes upon that right.  Before he can invoke this court's jurisdiction, however, McKay must demonstrate that he has standing to assert his First Amendment claims.

1.      <u>Legal Standard</u>

Article III of the United States Constitution limits federal courts' jurisdiction to certain "Cases" and "Controversies[,]" U.S. Const. art. 3, § 2, and "[t]he doctrine of standing gives meaning to these constitutional limits by 'identif[ying] those disputes which are appropriately resolved through the judicial process[,]'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (second alteration in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  In essence, the standing doctrine prompts courts to inquire "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

Courts assess constitutional standing in three parts, considering whether or not the plaintiff has alleged an "injury in fact" that is "fairly traceable to the challenged action of the defendant" and is capable of being "redressed" by the court.  *Lujan*, 504 U.S. at 560–61; *see also Morrison v. Bd. of Educ. of Boyd Cty.*, 521 F.3d 602, 608 (6th Cir. 2008).  "The party invoking federal jurisdiction bears the burden of establishing these elements[,]" *Lujan*, 504 U.S. at 561, and a plaintiff invoking jurisdiction must "show[] that he has standing for each type of relief sought[,]" *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  Moreover, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.  This means that, "in response to a summary judgment motion," a plaintiff cannot rely on "mere allegations" with respect to each standing element, "but

must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Id.* (internal citation omitted).

"In a pre-enforcement challenge, whether the plaintiff has standing to sue often turns upon whether he can demonstrate an 'injury in fact' before the state has actually commenced an enforcement proceeding against him." *Kiser v. Reitz*, 765 F.3d 601, 607 (6th Cir. 2014). The Supreme Court has recognized that "[a]n allegation of future injury may" satisfy the injury-in-fact requirement if the alleged "threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *Susan B. Anthony List*, 134 S. Ct. at 2341 (quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147, 1150 n.5 (2013)). Specifically, "a plaintiff satisfies the injury-in-fact requirement" in the pre-enforcement context "where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder.'" *Id.* at 2342 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

2.     Analysis

With respect to intent in the present case, the only record evidence regarding McKay's intended course of conduct at the time the district court ruled on the parties' first cross-motions for summary judgment was the allegation in McKay's amended complaint that he

> seeks to exercise a right to record trial activities, the police and sheriff deputies inside and outside the courtroom in the performance of their official duties, the judge in the performance of his or her duties, and other activities of public interest occurring at the Saginaw County Governmental Center.

(R. 75, PageID 1384.) These allegations, without more, cannot establish McKay's intended conduct "with the manner and degree of evidence required" for standing purposes at the summary judgment stage. *Lujan*, 504 U.S. at 561. While "mere allegations" might have been enough to survive a standing challenge at the motion to dismiss stage, they are insufficient to carry McKay past summary judgment. *Id.* McKay also points to an affidavit that he later filed regarding his intended actions. That affidavit repeats the above-quoted language from McKay's amended complaint and further states that "[b]ut for the Electronics Ban Order, I would take photographs and/or video recordings of public officials in the performance of their public duties

within the courtrooms at the Saginaw County Governmental Center" and would do so "quietly, noiselessly, and without [in] any way [interrupting] court proceedings[,] with a modern recording device that can be as small as a deck of playing cards, like an iPhone or other hand-held recording device." (R. 68-5, PageID 128, 1285.) But McKay did not file his affidavit until *after* the court's entry of partial summary judgment on the First Amendment claims, and "[i]n general, an appellate court reviewing a grant of summary judgment cannot consider evidence that was not before the district court at the time of its ruling." *Good v. Ohio Edison Co.*, 149 F.3d 413, 421 n.16 (6th Cir. 1998); *see also* Fed. R. App. P. 10(a). We may consider McKay's late-filed affidavit "for the sake of thoroughness" because it will not change the outcome of our analysis. *Good*, 149 F.3d at 421 n.16; *see also* 16A Charles Alan Wright et al., *Federal Practice & Procedure* § 3956.1 (4th ed. 2008). Even if McKay's affidavit constitutes sufficient summary judgment evidence of his intended conduct, McKay would still have to show that such conduct is "arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder" to establish standing to bring suit under the First Amendment. *Susan B. Anthony List*, 134 S. Ct. at 2342 (quoting *Babbitt*, 442 U.S. at 298).

Federspiel and Pfau do not dispute that the electronic device order proscribes McKay's intended conduct, and a plain reading of the order suggests that it would apply to McKay's proposed recording unless he sought and received an exemption.[1] Assuming without deciding that McKay's proposed recording activities amount to conduct arguably affected with a constitutional interest, McKay must still show "a credible threat of prosecution" in order to establish a requisite injury-in-fact. *Id.*[2] "[W]ithout some other indication of imminent

---

[1] *See infra* Part III.B.2.

[2] We assume for purposes of the standing inquiry in this case that the ban on recording courtroom proceedings may affect constitutional rights. Federspiel and Pfau challenge that premise, noting that both the Supreme Court and our circuit have declined to recognize a constitutional right to record courtroom proceedings. *See Estes v. State of Texas*, 381 U.S. 532, 539 (1965); *Conway v. United States*, 852 F.2d 187, 188 (6th Cir. 1988) (per curiam). McKay nevertheless points to the First Circuit's opinion in *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011), and the Eleventh Circuit's opinion in *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000), in support of his asserted right to record. McKay is correct that the *Glik* and *Smith* courts recognized a First Amendment right to videotape government officials carrying out their duties in public. *See Glik*, 655 F.3d at 82; *Smith*, 212 F.3d at 1333. But, as Federspiel and Pfau point out, neither of those cases concerned videotaping activity inside a courtroom, and courtrooms are considered "nonpublic" spaces for First Amendment purposes under our precedent. *Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005), *cert. denied*, 547 U.S. 1111 (2006). Given our resolution of this case, we do not settle the competing arguments here.

enforcement[,]" our circuit has held that mere allegations of a "subjective chill" on protected speech are insufficient to establish an injury-in-fact for pre-enforcement standing purposes. *Berry v. Schmitt*, 688 F.3d 290, 296 (6th Cir. 2012) (citing *Morrison*, 521 F.3d at 607). We have, however, found a credible threat of prosecution where plaintiffs allege a subjective chill *and* point to some combination of the following factors: (1) a history of past enforcement against the plaintiffs or others, *see, e.g.*, *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1049 (6th Cir. 2015); (2) enforcement warning letters sent to the plaintiffs regarding their specific conduct, *see, e.g.*, *Kiser v. Reitz*, 765 F.3d 601, 608–09 (6th Cir. 2014); *Berry*, 688 F.3d at 297; and/or (3) an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action, *see Platt v. Bd. of Comm'rs on Grievances & Discipline of the Ohio Supreme Court*, 769 F.3d 447, 452 (6th Cir. 2014). *See also Susan B. Anthony List*, 134 S. Ct. at 2345 (finding "substantial" "threat of future enforcement" based on "history of past enforcement[,]" statutory provision "allow[ing] 'any person' with knowledge of the purported violation to file a complaint[,]" and evidence that enforcement proceedings were common). We have also taken into consideration a defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff. *See Kiser*, 765 F.3d at 609; *Platt*, 769 F.3d at 452. By contrast, we have declined to find a credible threat of prosecution—and, thus, declined to find pre-enforcement standing—where plaintiffs have failed to show such a combination and where "the record is silent as to whether the [defendants] threatened to punish or would have punished" a plaintiff for proposed conduct that might violate the challenged policy or statute. *Morrison*, 521 F.3d at 611.

In the instant case, McKay argues that he faces a credible threat of prosecution because: (1) the existence of the electronic device order implies a threat of enforcement; (2) there are "[s]igns around the Saginaw County Governmental Center . . . threat[ening] enforcement" (Appellant's Br. at 21); and (3) Federspiel and Pfau "have never disavowed the enforcement of the . . . [o]rder against McKay" (*id.*). McKay relies on a case from the Seventh Circuit, *Bauer v. Shepard*, 620 F.3d 704 (7th Cir. 2010), for the proposition that the "existence of a statute implies a threat to prosecute," (Appellant's Br. at 20 (alteration omitted) (quoting *Bauer*, 620 F.3d at 708)). But unlike the judicial code of conduct at issue in *Bauer*, *see* 620 F.3d at 707, the electronic device order at issue here provides for exemptions on a case-by-case basis, which

makes enforcement less certain given that McKay does not allege that he has requested (much less been denied) such an exemption.

As for the signs McKay references, the record contains evidence of multiple signs posted in and around the Governmental Center; many of them state that there are to be "NO Electronic Devices on" certain floors and in certain specified areas of the building "without Judicial Permission[,]" and that "Violation May Result in Contempt Sanctions." (R. 44-6, PageID 756.) In both *Kiser* and *Berry*, we found a credible threat of enforcement based, in part, on the fact that the plaintiffs received multiple warning letters informing them that their specific conduct violated the laws challenged in those cases. *See Kiser*, 765 F.3d at 609; *Berry*, 688 F.3d at 297. The signs in the present case are distinguishable from those warning letters because the signs do not give rise to the same level of threatened enforcement—unlike the letters in *Kiser* and *Berry*, the signs in the present case address the general public, not McKay specifically or any of his past conduct, and the signs also reference the possibility of an exemption by judicial permission.

Finally, the issue of disavowal in this case appears to be more nuanced than McKay suggests. Federspiel and Pfau filed an affidavit from Lt. Pfau stating that deputy sheriffs have no independent authority to enforce the challenged order. Pfau maintains that:

> Sheriff's Deputies have been instructed not to detain[] any individual thought to be in violation of the Local Administrative Order or to confiscate any device maintained by any individual found to be in violation of the Local Administrative Order unless directed to do so by a Judge of the Saginaw County Courts.

(R. 44-9, PageID 791.) McKay has not pointed to any record evidence to dispute this testimony and, even construed in the light most favorable to McKay, Pfau's affidavit suggests that any threat of enforcement against McKay or others is less immediate than McKay contends.

More importantly, the record is silent regarding any history of past enforcement of the order against McKay or anyone else. There is simply no evidence in the current record that anyone has ever been held in contempt—or even subject to contempt proceedings—for violating the challenged order. McKay is correct that "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging" the electronic device order on constitutional grounds. *Susan B. Anthony List*, 134 S. Ct. at 2342. Nevertheless, under our precedent, McKay has not set

forth the manner and degree of evidence required to demonstrate a credible threat of enforcement at the summary judgment stage, especially since he has not yet sought an administrative exemption from the challenged order.  Consequently, based on the current record, we conclude that McKay lacks standing to bring his First Amendment claims.  We express no opinion on the merits of McKay's First Amendment arguments.

**B.**     **Fourteenth And Fifth Amendment Claims**

McKay further asserts that the electronic device order violates his right to equal protection under the Fourteenth Amendment and is void for vagueness under the Fifth Amendment.  As explained, McKay bears the burden of establishing this court's jurisdiction to hear his claims.  *See Lujan*, 504 U.S. at 561.

1.     Legal Standard

The standard for demonstrating a pre-enforcement injury-in-fact—and, thus, establishing a necessary element of standing—with respect to McKay's Fourteenth Amendment claim parallels the standard for his First Amendment claim:  McKay must allege "'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder.'"  *Susan B. Anthony List*, 134 S. Ct. at 2342 (quoting *Babbitt*, 442 U.S. at 298); *see also Babbitt*, 442 U.S. at 297–99 (applying single standard to analyze plaintiffs' pre-enforcement standing with respect to First and Fourteenth Amendment claims); *Platt*, 769 F.3d at 450–52 (same).  In regard to McKay's ability to maintain his Fifth Amendment vagueness claim, our circuit has held that "[e]ven if a statute might be vague as it relates to other, hypothetical [individuals], courts will not entertain vagueness challenges on behalf of [individuals] whose conduct clearly falls within the ambit of the statute."  *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012).  In other words, and as relevant in the instant case, if the electronic device order's prohibitions are not vague with respect to McKay's proposed conduct, then he lacks standing to challenge the order on vagueness grounds.   This means that in addition to meeting the constitutional standing requirements discussed above—an injury-in-fact fairly traceable to the challenged actions that is capable of being redressed by the court, *see Lujan*, 504 U.S. at 560–61—to pursue his vagueness

challenge McKay must also show that his proposed conduct does not clearly fall within the scope of the electronic device order.

### 2.      Analysis

Because McKay filed the affidavit regarding his intended conduct with his second cross-motion for summary judgment—which concerned his Fourteenth and Fifth Amendment claims—the affidavit is properly included in the appellate record with respect to this part of McKay's appeal. *See* Fed. R. App. P. 10(a).  The standing analysis for McKay's Fourteenth Amendment equal protection challenge substantially mirrors the analysis for his First Amendment claim.  The outcome is the same:   Even if his proposed recording arguably implicates a constitutional interest, McKay still has not shown a credible threat of prosecution, with the manner and degree of evidence required to withstand summary judgment.

As for McKay's Fifth Amendment standing and whether or not McKay's proposed conduct falls within the ambit of the electronic device order, McKay states in his affidavit that he intends to use "a modern recording device . . . like an iPhone" to "record trial activities, the police and sheriff deputies inside and outside the courtroom in the performance of their official duties, the judge in the performance of his or her duties, and other activities of public interest occurring at the Saginaw County Governmental Center." (R. 68-5, PageID 1285, 1284.)  McKay has further clarified that he intends "to record . . . inside and just outside the publicly-open courtrooms in the" building.  (Appellant's Br. at 28 n.13 (emphasis omitted).)  McKay does not appear to dispute that the challenged order would extend to his choice of recording device.  Instead, McKay argues that the phrase "related common areas" in the order's definition of "court related facilities" is unconstitutionally vague because it "fail[s] to inform him and the public what constitutes 'related common areas' within the Saginaw County Governmental Center[.]" (*Id.* at 46.)  Because the order expressly prohibits the possession or use of electronic communication devices in "courtrooms," (R. 35-2, PageID 477), it is beyond debate that the order encompasses McKay's proposed recording of courtroom proceedings.  And a plain reading of the order suggests that "related common areas" at a minimum includes the areas "just outside the publicly-open courtrooms" where McKay also allegedly intends to record.  The electronic

device order therefore clearly covers McKay's proposed conduct, depriving him of standing to challenge the order on vagueness grounds.  *See Kernell*, 667 F.3d at 750.

## IV.  CONCLUSION

In light of the sparse appellate record in the instant case and the constraints of our precedent, we cannot say that McKay has carried his burden to establish standing with respect to any of his claims in the manner and degree required at summary judgment.  We therefore **AFFIRM**.