RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0097p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

HON. DONNA GREENWELL DUTTON,

      *Plaintiff-Appellant/Cross-Appellee*,

    *v.*

JIMMY SHAFFER, in her official capacity as the Executive Secretary of the Judicial Conduct Commission; HON. R. MICHAEL SULLIVAN, HON. JEFF S. TAYLOR, HON. ELIZABETH CHANDLER, HON. EDDY COLEMAN, HON. JOE E. ELLIS, and HON. JANET LIVELY MCCAULEY, in their official capacities as Members of the Judicial Conduct Commission,

    *Defendants-Appellees/Cross-Appellants*.

Nos. 25-5352/5391

─────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Frankfort.
No. 3:23-cv-00039—Gregory F. Van Tatenhove, District Judge.

Argued:  March 5, 2026

Decided and Filed:  April 1, 2026

Before:  GIBBONS, WHITE, and MURPHY, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:**  Christopher Wiest, CHRIS WIEST, ATTY AT LAW, PLLC, Covington, Kentucky, for Judge Dutton.  Olivia F. Amlung, ADAMS LAW, PLLC, Covington, Kentucky, for the Secretary and Members of the Judicial Conduct Commission.  **ON BRIEF:**  Christopher Wiest, CHRIS WIEST, ATTY AT LAW, PLLC, Covington, Kentucky, Thomas B. Bruns, BRUNS CONNELL VOLLMAR & ARMSTRONG, Cincinnati, Ohio, for Judge Dutton.  Olivia F. Amlung, Jeffrey C. Mando, ADAMS LAW, PLLC, Covington, Kentucky, for the Secretary and Members of the Judicial Conduct Commission.

---

**OPINION**

---

JULIA SMITH GIBBONS, Circuit Judge.  This appeal arises from Donna Greenwell Dutton's lawsuit against the Kentucky Judicial Conduct Commission (JCC) for attempting to enforce state judicial ethics rules against her.  The JCC suspected that Dutton's statement to a newspaper during her campaign for reelection ran afoul of three rules in the Kentucky Code of Judicial Conduct (KCJC).  After the JCC sent Dutton a Proposed Agreed Order to discipline her, Dutton sued Jimmy Shaffer, in her official capacity as Executive Secretary of the JCC, as well as R. Michael Sullivan, Jeff S. Taylor, Elizabeth Chandler, Eddy Coleman, Joe E. Ellis, and Janet Lively McCauley, in their official capacities as Members of the JCC.

Alleging that the JCC's attempt to enforce the KCJC violated her free speech rights under the First Amendment, Dutton pled one facial challenge and one as-applied challenge to each of the three rules.  The district court granted summary judgment and ordered permanent injunctive relief in favor of Dutton based on her as-applied challenge to Rule 4.1(A)(11), which prohibits judicial candidates from making false statements of material fact.  Yet the court rejected Dutton's as-applied challenges to Rule 1.2, which requires judicial candidates to uphold judicial independence, integrity, and impartiality, and Rule 2.4(B), which prohibits them from allowing personal relationships to influence judicial conduct or judgment.  The court also denied Dutton relief based on her facial challenges to all three Rules.

We affirm in part and reverse in part the district court's order.  While the district court properly granted Dutton's motion for summary judgment and a permanent injunction based on her as-applied challenge to Rule 4.1(A)(11), it erred in denying her motion based on her as-applied challenges to Rules 1.2 and 2.4(B).

**I.**

Dutton is a sitting Kentucky district court judge in and for the 53rd Judicial Circuit, which includes Anderson, Shelby, and Spencer Counties.  She was a judge when she sought reelection in 2022.  On October 24, 2022, Dutton made a statement to *The Sentinel-News*.  The newspaper

published her statement in an article titled *Hot-Button Issues Keeping Races Lively*, which discussed Dutton's disciplinary history.  The article explained that the JCC had suspended her in 2020 for accusing defense counsel of stealing from her husband and engaging in other misconduct during a bench conference.

The article referred to Dutton's conduct in 2020 while presiding over a bench conference in *Commonwealth v. Carter*, a state court case.  According to the JCC, Dutton "falsely accused a local attorney of stealing money from her husband's law firm," did not recuse herself from the case, and interfered with the attorney's right to obtain a video copy of the bench conference. DE 1-7, JCC Proposed Agreed Order, Page ID 47.  Dutton has emphasized that the JCC disciplined her because she made inappropriate comments—not because she made false statements.

This suit concerns the JCC's enforcement against Dutton for the statement she made to *The Sentinel-News* about this prior issue.  Dutton stated, "'That issue involved the theft of a large sum of money by an attorney who also happens to practice law with my opponent.' . . . 'I let my personal feelings about the theft interfere with my courtroom conduct and for that I apologize. No litigants were affected by my actions, and the only person hurt was me.'"  DE 1-4, Newspaper Article, Page ID 24.

On January 23, 2023, Jimmy Shaffer sent Dutton a letter on behalf of the JCC to inform her that a disciplinary complaint had been filed against her regarding the "alleged statements [she] made to *The Sentinel-News* in response to questions about [her] previous suspension by the Commission[.]"  DE 1-5, JCC 2023 Letter, Page ID 25.  The JCC's letter recounted the complaint's allegations that Dutton made false statements in the newspaper article regarding her previous suspension.  In the article, as described above, Dutton stated the following:  "That issue involved the theft of a large sum of money by an attorney who also happens to practice law with my opponent . . . .  No litigants were affected by my actions, and the only person hurt was me." *Id.*  The complaint alleged that Dutton's statements were false because no theft occurred, no theft was undertaken by an attorney who practiced law with Dutton's opponent, and the litigant in *Carter* was indeed harmed because Dutton's failure to recuse herself caused him to "live and

work under bond conditions longer than necessary." *Id.* In its letter, the JCC requested that Dutton provide a "written response to the allegations" by February 27, 2023. *Id.*

Dutton responded on February 24, 2023. She asserted that her statement to the newspaper was "fair and accurate" in "addressing both the events precipitating her suspension and the suspension itself." DE 1-6, Response to JCC Letter, Page ID 26. Although the JCC's letter did not identify specific rules that Dutton had violated, Dutton anticipated potential enforcement based on "Supreme Court Rule 4.300, [KCJC], Canon 4, or any other provision of the Code." *Id.* Dutton also specifically noted that her "statement . . . did not violate Rule 4.1(A)(11)," which prohibits a judge or judicial candidate from "knowingly, or with reckless disregard for the truth, mak[ing] any false statement of material fact." *Id.* Dutton explained why each statement was not false.

We recount Dutton's responses and other evidence pertinent to each statement's veracity in the summary-judgment record. Dutton first stated that her prior disciplinary issue "involved the theft of a large sum of money by an attorney . . . ." DE 1-4, Newspaper Article, Page ID 24. Some background is in order. Dutton's husband, C. Gilmore Dutton III, is an attorney in Kentucky who employed Cole Tomlinson—the defense counsel in *Carter*. Mr. Dutton discovered that Tomlinson over several months had "diverted to himself funds from clients that should have been paid to Mr. Dutton's firm[.]" DE 31, Verified Am. Compl., Page ID 323; DE 1-6, Response to JCC Letter, Page ID 27; DE 34-1, Aff. Decl. C. Gilmore Dutton III, Page ID 370. According to Mr. Dutton, he learned of the theft when his firm received an IRS Form indicating that the firm had "been paid money from various clients, which were never received in [the firm's] office." DE 34-1, Aff. Decl. C. Gilmore Dutton III, Page ID 370. The fees Tomlinson stole were "substantial," but no audit was conducted. DE 1-6, Response to JCC Letter, Page ID 27–29; DE 34-1, Aff. Decl. C. Gilmore Dutton III, Page ID 371.

After discovering the theft, Mr. Dutton terminated Tomlinson's employment, reported his conduct to the Kentucky Bar Counsel, and demanded repayment. Tomlinson tendered Mr. Dutton a check dated January 30, 2019. The check reflects a payment of $2,150.00 to the "Dutton Law Office." DE 1-2, Check Repaying Trust Funds, Page ID 19. Mr. Dutton chose "not to pursue the complaint" or civil or criminal remedies against Tomlinson, and "it is believed

that the complaint" was "dismissed by the [Kentucky Bar Association]." DE 1-6, Response to JCC Letter, Page ID 27; DE 34-1, Aff. Decl. C. Gilmore Dutton III, Page ID 371. Dutton alleged that this theft was a "fact," and emphasized that her ethical violations in 2020 were based on the impropriety of her remarks rather than their veracity. DE 31, Verified Am. Compl., Page ID 324, 324 n.1.

Next, the JCC flagged Dutton's statement concerning Tomlinson's practice of law with Dutton's opponent in the Kentucky judicial election. The JCC first implied and later proposed a finding that the statement was false because Tomlinson did not "*practice law*" with Dutton's opponent. *See* DE 1-5, JCC 2023 Letter, Page ID 25 (emphasis added); DE 1-7, JCC Proposed Agreed Order, Page ID 48.

Dutton responded that Tomlinson practiced law or "shared office space with" her opponent. DE 1-6, Response to JCC Letter, Page ID 27, 29; *see* DE 31, Verified Am. Compl., Page ID 326. Specifically, she alleged that Tomlinson and her opponent, Amanda Wills Cypert, not only "shared office space" and "secretarial staff," but also "covered hearings for each other from time to time." DE 31, Verified Am. Compl., Page ID 326. Mr. Dutton confirmed that Tomlinson, at the time of his termination, was in an office-sharing arrangement or casual attorney association with Dutton's opponent in an office located at 301 Washington Street, Shelbyville, KY 40065. Further, Mr. Dutton believed that Tomlinson had worked there since he was fired. Mr. Dutton also confirmed that "Cypert . . . shares office space, works with, or is associated with Mr. Tomlinson" at that address. DE 34-1, Aff. Decl. C. Gilmore Dutton III, Page ID 371–72.

The JCC then cited as false Dutton's remark that "[n]o litigants were affected by [her] actions, and the only person hurt was" Dutton. DE 1-5, JCC 2023 Letter, Page ID 25. According to the complaint, Dutton's "actions delayed resolution of Mr. Carter's case and caused him to live and work under bond conditions longer than necessary," and Dutton "sought to harm litigants when [she] failed to recuse from the attorney's cases." *Id.*

Dutton responded that any concern regarding delay in Carter's case was "speculative" and unsupported by the record. DE 1-6, Response to JCC Letter, Page ID 31. She noted that her

statement was an expression of subjective opinion.  When Carter appeared without counsel for his arraignment before Dutton on July 2, 2019, Dutton set his next appearance for July 18, 2019.  Carter appeared with counsel for the first time then and requested that Dutton recuse herself.  During a bench conference to discuss the recusal motion, Dutton accused Tomlinson of theft.  Dutton recused herself later that same day.  "[O]nly a couple of hours had lapsed between" Dutton's comment and her recusal.  DE 41, Depo. Tr. Donna Dutton, Page ID 479.

After Dutton's recusal, Carter's case was re-docketed for July 25, 2019; and on that date, the new judge imposed a sentence of six months deferred and scheduled a review for January 23, 2020.  Dutton claimed that it was not clear that Carter's "case would have been resolved—or [his] bond conditions modified—earlier but for [her] conduct," so the JCC's assertion of falsity was "speculative[.]"  DE 1-6, Response to JCC Letter, Page ID 32.  She stated that Carter's case was not delayed because of her recusal and that Carter would agree that no litigants were affected and only she was hurt.  Dutton further asserted that it is a stretch to suggest that, even if her conduct played a role in creating a delay, Carter was harmed by a "one-week delay in the resolution of his case[.]"  *Id.*

On May 17, 2023, Jeff Mando, the JCC's outside counsel, sent Dutton's counsel, Guthrie True, an email with a "proposed Public Reprimand" attached.  DE 39-6, Email Correspondence, Page ID 563.  This proposed reprimand was the JCC's Proposed Agreed Order, which directly led to Dutton's suit.  The Proposed Agreed Order, titled "In Re the Matter of: Donna G. Dutton, District Court Judge 53rd Judicial Circuit," would have Dutton "waive[] formal proceedings and . . . agree[] to" its disposition.  DE 1-7, JCC Proposed Agreed Order, Page ID 47.  In the document, the JCC concluded the following:  (1) Dutton's remark about the theft was "inaccurate, and inappropriately attempt[ed] to undermine the severity of her prior judicial misconduct," (2) Dutton's remark about the attorney who committed the theft practicing law with her opponent was an attempt to "inappropriately fabricate a conspiracy in furtherance of her election objectives," and (3) Dutton's remark that no litigants were harmed was false and "downplay[ed] the severity of her prior misconduct."  *Id.* at 47–48.

On these bases, the JCC proposed "that Judge Dutton's conduct violated" Kentucky Supreme Court Rule (SCR) 4.020(1)(b)(i), SCR 4.300, and Kentucky Rules of Judicial Conduct

(Rules) 4.1(A)(11), 1.2, and 2.4(B). *Id.* at 48–49. Rule 4.1(A)(11) bars judges and judicial candidates from "knowingly,[] or with reckless disregard for the truth, mak[ing] any false statement of material fact[.]" DE 42-7, Rule 4.1, Page ID 718. Rule 1.2 requires them to uphold the independence, integrity, and impartiality of the judiciary and Rule 2.4(B) prohibits them from allowing "family, social, political, financial, or other relationships" to influence their judicial conduct or judgment. DE 42-14, JCC Proposed Agreed Order, Page ID 754–55. The Order purported to "publicly reprimand[]" Dutton. DE 1-7, JCC Proposed Agreed Order, Page ID 49.

In response to Mando's email including the Order, True replied, "Before I send this to [Dutton], how wedded are you to the language used? I need to know whether there can be revisions." DE 39-6, Email Correspondence, Page ID 562. Mando responded that the JCC "approved the document," and "[i]f [True has] proposed changes, send them to me and I will discuss with the Commission." *Id.* Dutton believed True could not make any revisions and that there would be no "negotiations regarding the fact" that the Order would be a public reprimand and "no negotiation of [its] content." DE 41, Depo. Tr. Donna Dutton, Page ID 523–25, 527–28. True has also stated that "Mr. Mando [had] indicated that the [JCC] was wed[ded] to a public reprimand[.]" DE 43-1, Aff. Decl. J. Guthrie True, Page ID 781. Because she "was not going to agree to a lie," Dutton declined to agree to the Order. DE 41, Depo. Tr. Donna Dutton, Page ID 527. And given the JCC's enforcement activity, Dutton felt "too scared to say anything" publicly. *Id.*

## II.

On May 24, 2023, Dutton filed her original complaint, which pled as-applied and facial challenges to the three Rules, and concurrently moved for emergency injunctive relief. Specifically, Dutton requested a preliminary injunction or temporary restraining order prohibiting the defendants from instituting formal proceedings against her. On September 15, 2023, the district court denied Dutton's motion for a preliminary injunction because Dutton had won her election, so she no longer "face[d] a threat of imminent, irreparable harm." DE 17, Order, Page ID 208. Dutton timely appealed.

On January 22, 2024, Dutton filed a verified amended complaint, now operative, in which she pled both facial and as-applied challenges to Rules 4.1(A)(11), 1.2, and 2.4(B). Part I of Count I includes Dutton's as-applied challenges to the Rules, and Part II includes her facial challenges to the Rules. Each part contains a request for permanent injunctive and declarative relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201, 2202. The defendants promptly answered Dutton's verified amended complaint.

On April 1, 2024, Dutton moved for summary judgment and a permanent injunction against the defendants, and, in response, the defendants made a cross-motion for summary judgment on Dutton's claims. Before the district court ruled on the parties' motions for summary judgment, we vacated its decision denying Dutton's request for a preliminary injunction. *Dutton v. Shaffer*, No. 23-5850, 2024 WL 3831884, at \*5 (6th Cir. Aug. 15, 2024). We remanded with instructions for the court to conduct the preliminary injunction analysis "in its entirety," as it had analyzed only the irreparable harm factor and not Dutton's likelihood of success on the merits. *Id.*

Following our order, the district court granted in part and denied in part Dutton's request for a preliminary injunction. And just over two months later, the court granted in part and denied in part Dutton's and the defendants' motions for summary judgment. The court denied Dutton a permanent injunction based on her facial challenges to all three Rules and her as-applied challenges to Rules 1.2 and 2.4(B). The court, however, sustained Dutton's as-applied challenge to Rule 4.1(A)(11) because the JCC's enforcement "r[an] afoul of the First Amendment." DE 52, Op. & Order, Page ID 857. On April 3, 2025, the district court entered its judgment granting Dutton a permanent injunction limited to the defendants' enforcement of Rule 4.1(A)(11) against Dutton for her statement to *The Sentinel-News*. Dutton filed her notice of appeal on April 15, 2025, and the defendants filed their notice of cross-appeal on April 25, 2025.

**III.**

We may assess whether a plaintiff has standing to sue because standing is vital to our exercise of subject matter jurisdiction. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007). In determining standing at summary judgment, we accept as true the

plaintiff's evidence-backed allegations.  *Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019, 1022 (6th Cir. 2024).

We review de novo a district court's grant of summary judgment.  *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016).  Summary judgment is appropriate where a party establishes that there is no genuine issue of material fact and the party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it could affect the suit's outcome under the governing law, and an issue about a material fact is genuine if the evidence would allow a reasonable jury to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  We believe the non-moving party's evidence and draw all justifiable inferences in that party's favor.  *Morales v. Am. Honda Motor Co.*, 71 F.3d 531, 535 (6th Cir. 1995).  These standards do not change when parties advance cross-motions for summary judgment.  *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016).  We consider each motion on its own.  *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

Regarding a permanent injunction, we review its grant or denial for an abuse of discretion.  *United States v. Miami Univ.*, 294 F.3d 797, 806, 820 (6th Cir. 2002); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998).  A district court abuses its discretion when it relies on "clearly erroneous findings of fact or when it improperly applies the law." *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298, 317 (6th Cir. 2001).  To reverse, we must have a "'definite and firm conviction that the trial court committed an error of judgment.'"  *Pouillon v. City of Owosso*, 206 F.3d 711, 714 (6th Cir. 2000) (quoting *Monette v. AM-7-7 Baking Co.*, 929 F.2d 276, 280 (6th Cir. 1991)).

**IV.**

The district court granted summary judgment and entered a permanent injunction in favor of Dutton based on her as-applied challenge to Rule 4.1(A)(11), and it granted summary judgment in favor of the defendants and denied Dutton relief based on her other challenges. Dutton appeals the court's denial of her as-applied challenges to Rules 1.2 and 2.4(B) and her facial challenges.  On cross-appeal, the defendants contest the district court's grant of summary judgment and entry of a permanent injunction based on Dutton's as-applied challenge to Rule

4.1(A)(11).  The defendants also raise on appeal Dutton's standing to sue and the Proposed Agreed Order's admissibility.  We consider in turn Dutton's standing to sue, the Order's admissibility, and Dutton's as-applied challenges to Rules 4.1(A)(11), 1.2, and 2.4(B).

**A.**

Dutton has standing to bring her pre-enforcement challenge because she has established injury in fact.  She expressed an intent to engage in campaign speech in a manner arguably proscribed by the Rules.  Moreover, she established a credible threat that the JCC will enforce the Rules against her.  *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014).  We have also found standing in similar cases.  *See Fischer v. Thomas*, 52 F.4th 303, 307–09 (6th Cir. 2022) (per curiam); *Winter v. Wolnitzek*, 834 F.3d 681, 687 (6th Cir. 2016).

Although the district court did not assess whether Dutton had standing to bring her First Amendment claims, the defendants contend that she did not.  The defendants contest only the injury in fact element, which depends in this case on whether the "threatened enforcement of a law creates an Article III injury."  *See Driehaus*, 573 U.S. at 158.  Specifically, they assert that Dutton failed to establish a "sufficiently concrete and imminent" injury because she showed no credible threat that the JCC would enforce the KCJC generally or these Rules specifically. CA6 R. 22, Defs.' Br., Page ID 23–24.  They reason that the JCC never "actually applied" the Rules to Dutton, as Dutton's claims relied on a "*draft* Agreed Order of Public Reprimand" written amid "settlement discussions," and the JCC did not guarantee that it would enforce the exact Rules identified in its Order if it pursued formal charges.  *Id.* at 22–24 (emphasis in original).

It is well-established that a litigant subject to a threat of enforcement need not await "actual arrest, prosecution, or other enforcement action" to establish injury in fact.  *Driehaus*, 573 U.S. at 158; *accord MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007).  But the litigant must still show that enforcement is "sufficiently imminent."  *Driehaus*, 573 U.S. at 159; *Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438, 454–55 (6th Cir. 2017).

Threatened enforcement is sufficiently imminent where a party "'has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed

by a statute, and there exists a credible threat of prosecution thereunder.'" *Driehaus*, 573 U.S. at 160 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). In *Driehaus*, a congressman filed a complaint with the Ohio Elections Commission, urging it to enforce a false statement statute against a pro-life group. *Id.* at 153–54. The petitioner group, Susan B. Anthony List (SBA), filed a pre-enforcement suit based on the First Amendment because its speech had been "chilled," it intended to engage in "substantially similar activity in the future," and it faced the possibility of future action based on this speech. *Id.* at 154–55.

First, the Court concluded that SBA intended to engage in a course of conduct affected with a constitutional interest because it had made statements that it sought to make in future election cycles and those statements were political speech in a campaign for political office. *Id.* at 161–62. Second, the Court reasoned that SBA's speech was "arguably proscribed" by the Ohio false statement statute given its broad sweep and the fact that the Commission panel had "already found probable cause to believe that SBA violated the statute[.]" *Id.* at 162; *see also Babbitt*, 442 U.S. at 298 (requiring that a party show that the statute "arguably" proscribes the plaintiff's conduct). Third, the Court proceeded to find that the threat of the statute's enforcement was "substantial" based on the following factors: a history of past enforcement, the Commission's findings, the ease with which a person could lodge a complaint with the Commission, the frequency of Commission proceedings, and the fact that the respondents did not disavow enforcement. *Driehaus*, 573 U.S. at 164–65.

In accordance with the third part of the *Driehaus* Court's analysis, we have determined that a credible threat exists where a plaintiff alleges a subjective chill and some combination of these factors, which we refer to as the *McKay* factors. *See McKay*, 823 F.3d at 869. No credible threat of enforcement exists where the record is "'silent as to whether the [defendants] threatened to punish or would have punished'" the plaintiff for conduct that might violate the challenged law. *Id.* (quoting *Morrison v. Bd. of Educ. of Boyd Cnty.*, 521 F.3d 602, 610 (6th Cir. 2008)); *Kareem*, 95 F.4th at 1023, 1025–26; *Fischer*, 52 F.4th at 307–08.

*Driehaus* compels us to conclude that Dutton has standing. As a preliminary matter, Dutton alleged and stated under oath that she filed suit because the JCC's measures chilled her speech; that she intends to run for a judgeship in 2026, make public appearances, and respond to

media inquiries as she did in *The Sentinel-News*; and that she faces the threat of the JCC's enforcement for her speech. *See Driehaus*, 573 U.S. at 154–55. First, Dutton has expressed an intent to engage in constitutionally protected speech in support of her judicial campaign. *See id.* at 161–62. She intends to speak about her qualifications and earlier disciplinary controversy. And her speech is protected political speech in a campaign for office. *See Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 436 (2015) ("Judicial candidates have a First Amendment right to speak in support of their campaigns."); *Winter*, 834 F.3d at 695–96 ("If the Commission wishes to impose mandatory sanctions on the speech of judicial candidates for office, . . . it must satisfy the rigors of the First Amendment in doing so."); *see also Kiser v. Reitz*, 765 F.3d 601, 608 (6th Cir. 2014); *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971).

Second, the Rules arguably proscribe Dutton's speech. *See Driehaus*, 573 U.S. at 160, 162; *see also* DE 31, Verified Am. Compl., Page ID 327–30. Rule 4.1(A)(11) bars judicial candidates from "knowingly,[] or with reckless disregard for the truth, mak[ing] any false statement of material fact[.]" DE 42-7, Rule 4.1, Page ID 718. Rule 1.2 requires them to uphold the independence, integrity, and impartiality of the judiciary, and Rule 2.4(B) forbids them from allowing "family, social, political, financial, or other relationships" to influence their conduct or judgment. DE 42-14, JCC Proposed Agreed Order, Page ID 754–55. Dutton's speech regarding the "theft of a large sum of money" could be deemed a knowingly false statement of material fact. *See, e.g.*, DE 1-4, Newspaper Article, Page ID 24 ("That issue involved the theft of a large sum of money by an attorney who also happens to practice law with my opponent [.] . . . No litigants were affected by my actions, and the only person hurt was me."). As the defendants suggest, false statements of material fact regarding prior discipline could be deemed an "affront" to the judiciary's integrity. *See* DE 39, Defs.' Mot. for Summ. Judgment, Page ID 425. And making a false "comment about a certain attorney stealing money from [her] husband" could reflect a personal relationship's interference with judicial judgment. *See* DE 41, Depo. Tr. Donna Dutton, Page ID 477. These are "*plausible* interpretation[s]" of the Rules, so the Rules arguably proscribe Dutton's conduct. *See Kentucky v. Yellen*, 54 F.4th 325, 337 (6th Cir. 2022).

The JCC, of course, also believed that the Rules barred Dutton's speech. In its January 2023 letter, the JCC stated that a complaint had been lodged against Dutton based on her

remarks.    And in its Proposed Agreed Order, the JCC "conclude[d]" that Dutton's conduct violated the three Rules.  DE 1-7, JCC Proposed Agreed Order, Page ID 48–49; *see Driehaus*, 573 U.S. at 162 ("[A] Commission panel here already found probable cause to believe that SBA violated the statute" when it made a statement similar to those it plans to make).  Under these circumstances, "we have no difficulty concluding that [Dutton's] intended speech is 'arguably proscribed' by the law." *See Driehaus*, 573 U.S. at 162; *Winter*, 834 F.3d at 687; *Boone Cnty. Republican Party Exec. Comm. v. Wallace*, 132 F.4th 406, 415–18 (6th Cir. 2025).

Third, Dutton has established a credible threat of enforcement because she alleged a subjective chill based on the JCC's conduct and showed the applicability of at least four of the *McKay* factors.  *See McKay*, 823 F.3d at 869.  She alleged a subjective chill when she stated that the "continued threats of enforcement" were preventing her from responding to media inquiries in the way she responded to *The Sentinel-News*.  DE 31, Verified Am. Compl., Page ID 329–30; *see McKay*, 823 F.3d at 869.  And she emphasized that she was "too scared to say anything" publicly after receiving the JCC's Proposed Agreed Order for a public reprimand.  DE 41, Depo. Tr. Donna Dutton, Page ID 527.

With respect to the first factor, Dutton has shown a history of the JCC's enforcement against her, but that past enforcement did not target the "same conduct" at issue here. *Cf. Driehaus*, 573 U.S. at 164; *Christian Healthcare Ctrs., Inc. v. Nessel*, 117 F.4th 826, 848–49 (6th Cir. 2024).  The JCC's earlier enforcement addressed Dutton's conduct when she presided over a bench conference and accused a local attorney of stealing from her husband's law firm. The enforcement activity at issue here, however, concerns her statement to *The Sentinel-News* regarding that earlier controversy.  A prior instance of enforcement based on separate conduct does not necessarily portend a threat of later enforcement.  *See Driehaus*, 573 U.S. at 164; *but see Fischer*, 52 F.4th at 308 (finding it relevant that the JCC had previously enforced rules against *other* candidates).  Yet even assuming this factor cuts against finding a credible threat of enforcement, the remaining factors do not.

Because the JCC sent Dutton a warning letter regarding her statement and the Proposed Agreed Order, Dutton established the second factor.  *See Driehaus*, 573 U.S. at 165; *Kiser*, 765F.3d at 609–10; *Berry v. Schmitt*, 688 F.3d 290, 296–98 (6th Cir. 2012).  Dutton has also

shown that the KCJC encourages enforcement, as anyone can file a complaint with the JCC about a judge's or judicial candidate's conduct. *See Driehaus*, 573 U.S. at 164; *Platt*, 769 F.3d at 452. Shaffer noted in sworn testimony on behalf of the JCC that complaints number in the "hundreds . . . each year," the JCC sent nineteen warning letters in one year, and four of those resulted in action, so enforcement proceedings are frequent. DE 42-5, Aff. Decl. Shaffer, Page ID 712–14; *see Driehaus*, 573 U.S. at 164 (finding that proceedings were "not a rare occurrence" because the Commission handled twenty to eighty complaints per year).

And the defendants did not disavow enforcement against Dutton. *See Driehaus*, 573 U.S. at 165; *McKay*, 823 F.3d at 869. In fact, informal conferences like the one JCC intended to have necessarily precede enforcement actions. We do not expect plaintiffs to satisfy each *McKay* factor. *See Fischer*, 52 F.4th at 307–08 ("This isn't a laundry list; the candidates don't have to satisfy all the factors."). Because Dutton alleged a subjective chill and produced evidence to support these factors, she established a credible threat of enforcement. *See McKay*, 823 F.3d at 869.

While the *Driehaus* Court did not base its finding of imminence solely on the Commission's proceedings, as SBA's allegations were backed by the "additional threat" of criminal prosecution, it did not imply that the "burdensome . . . proceedings" could not have sufficed. *Driehaus*, 573 U.S. at 166. We have decided that the threat of administrative enforcement confers standing based on records much like the one here. *See Kiser*, 765 F.3d at 609–10; *Winter*, 834 F.3d at 687; *Berry*, 688 F.3d at 296–98; *Fischer*, 52 F.4th at 308–09; *Platt*, 769 F.3d at 452; *see also Ohio C.R. Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 625–26 n.1 (1986). Dutton thus has standing to challenge the JCC's enforcement of Rules 4.1(A)(11), 1.2, and 2.4(B).

**B.**

The defendants argue that the district court improperly considered the JCC's Proposed Agreed Order because the Order is inadmissible pursuant to Federal Rule of Evidence 408. We disagree because Rule 408 does not exclude the Order.

Rule 408 states that a party cannot introduce evidence of an offer of "valuable consideration in compromising or attempting to compromise" a claim to "prove or disprove the validity or amount of a disputed claim[.]" Fed. R. Evid. 408(a)(1). The Rule "excludes evidence of settlement offers only if such evidence is offered to prove liability for or invalidity *of the claim under negotiation.*" *Vulcan Hart Corp. (St. Louis Div.) v. N.L.R.B.*, 718 F.2d 269, 277 (8th Cir. 1983) (emphasis added).

Rule 408 does not exclude the Order because the claims in the Order are not the claims in Dutton's suit. The Order discusses the JCC's claims that Dutton violated the KCJC, but it does not discuss Dutton's constitutional claims against the JCC. *See id.* Stated differently, the "claim[s] under negotiation" in the Order are not the claims at issue in this litigation. *See id.*; *Broadcort Cap. Corp. v. Summa Med. Corp.*, 972 F.2d 1183, 1194 (10th Cir. 1992) ("Rule 408 did not bar [the] evidence because it related to settlement discussions that involved a different claim than the one at issue in the current trial."). In addition, Dutton does not seek to use the Order to "prove or disprove" the "validity" of her claims or the Commission's findings. *See* Fed. R. Evid. 408(a)(1). She seeks to show the Commission's "state of mind" about whether she violated the KCJC. *See Croskey v. BMW of N. Am., Inc.*, 532 F.3d 511, 519 (6th Cir. 2008); *Coakley & Williams Const., Inc. v. Structural Concrete Equip., Inc.*, 973 F.2d 349, 353–54 (4th Cir. 1992). Therefore, the district court did not err in considering the Proposed Agreed Order.

## C.

The district court properly sustained Dutton's as-applied challenge to the JCC's enforcement of Rule 4.1(A)(11) against her speech. We uphold the court's decision because the JCC attempted to apply the Rule to statements that were "readily capable of a true interpretation" on the summary-judgment record, so its enforcement of Rule 4.1(A)(11) fails strict scrutiny review. *See Winter*, 834 F.3d at 693.

Specifically, the district court concluded that it could "conceive of a world" in which Dutton's three statements to *The Sentinel-News* were "readily capable of a true interpretation," or "at the very least . . . not made 'knowingly, or with reckless disregard for truth.'" DE 52, Op. & Order, Page ID 851–52 (quoting Rule 4.1(A)(11)). The court determined that Dutton's remark

that the issue involved the theft of a large sum by an attorney who happened to practice law with her opponent could be deemed either an "opinion" or a "misleading statement on her prior disciplinary action," both of which are protected under the First Amendment.  *Id.* at 853–54. And it decided that Dutton's statement that no litigants were affected by her actions and she was the only person hurt was a "matter of opinion and not subject to Rule 4.1(A)(11)."  *Id.* at 854–55. The defendants stress that the record "contains sufficient evidence" that Dutton's statement was "actually and materially false," not a protected opinion or negligent misstatement.  CA6 R. 22, Defs.' Br., Page ID 30, 32.

First, strict scrutiny applies to Rules 4.1(A)(11), 1.2, and 2.4(B).  Each Rule is a content-based restriction on judicial candidates' speech, preventing speech "about some subjects . . . but not others," and referring to and being "justified with reference to" the contents of candidates' speech.  *See Carey v. Wolnitzek*, 614 F.3d 189, 199 (6th Cir. 2010) (citation modified) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).  Indeed, strict scrutiny "applies to any State's efforts to regulate the campaign speech of sitting or aspiring judges."  *Winter*, 834 F.3d at 688; *see Weaver v. Bonner*, 309 F.3d 1312, 1319 (11th Cir. 2002).  Rules facing strict scrutiny are "presumptively invalid" unless the restriction discriminates based on certain classes of unprotected speech, none of which is relevant here.  *See Carey*, 614 F.3d at 199 (listing the "categorical carve-outs," including fighting words or incitement, defamation, obscenity, and child pornography).  And these Rules target a "core area of free-speech protection: elections." *Id.*

Because strict scrutiny applies to Rule 4.1(A)(11), the JCC may enforce the Rule against Dutton's speech only in a manner "'narrowly tailored to serve a compelling interest.'"  *See O'Toole v. O'Connor*, 802 F.3d 783, 789 (6th Cir. 2015) (quoting *Williams-Yulee*, 575 U.S. at 442).  We have already decided that a constitutional prohibition on false statements—one nearly identical to Rule 4.1(A)(11)—cannot survive strict scrutiny as applied to a statement that is "readily capable of a true interpretation[.]" *Winter*, 834 F.3d at 693.  Such an application is not narrowly tailored because it "outstrips" a state's interest in "ensuring candidates don't tell knowing lies and thus fails to give candidates the 'breathing space' necessary to free debate."  *Id.* (quoting *Brown v. Hartlage*, 456 U.S. 45, 60–61 (1982)).  And an application of Rule 4.1(A)(11)

to speech that is not false would not further Kentucky's compelling interest in preventing candidates from lying. *See id.*; *see also Berry*, 688 F.3d at 303 (statements of opinion that do not "'imply a false assertion of fact'" and seemingly factual statements that "'cannot reasonably be interpreted as stating actual facts about their target'" are protected (quoting *Standing Comm. on Discipline of U.S. Dist. Ct. for Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430, 1438 (9th Cir. 1995))).

We agree that the Rule's application to Dutton's speech fails strict scrutiny review because it is not narrowly tailored to serve a compelling interest. The defendants stretched the Rule's reach beyond materially false statements of fact to regulate speech that was either opinion-based or "readily capable of a true interpretation," and they lacked a compelling interest in doing so. *See Winter*, 834 F.3d at 693.

First, the JCC's attempt to enforce Rule 4.1(A)(11) against Dutton based on her statement about the theft cannot survive strict scrutiny because it is an attempt to enforce a prohibition on false statements to speech that is "readily capable of a true interpretation[.]" *See Winter*, 834 F.3d at 693. Dutton's statement that the issue "involved the theft of a large sum of money by an attorney" is largely uncontroverted. *See* DE 1-4, Newspaper Article, Page ID 24. Mr. Dutton stated that he discovered Tomlinson's diversion of client funds that should have been paid to Mr. Dutton's law firm; he discovered the theft after his firm received an IRS Form indicating it had been paid money that was never received; and Tomlinson stole "between $25,000 and $50,000" in fees. DE 34-1, Aff. Decl. C. Gilmore Dutton III, Page ID 370–71. The check that Tomlinson provided Mr. Dutton for part of the stolen funds reflected a payment of $2,150.00 to the Dutton Law Office on January 30, 2019. And Dutton stated that the theft occurred, even if her comment about it during the bench conference was inappropriate.

While the defendants attempted to enforce Rule 4.1(A)(11) against Dutton by labeling this statement "inaccurate," they do not explain how it was false. DE 1-7, JCC Proposed Agreed Order, Page ID 47; *accord* DE 1-5, JCC 2023 Letter, Page ID 25; DE 39, Defs.' Mot. for Summ. Judgment, Page ID 421. As the district court reasoned, one cannot conclude that Tomlinson did not engage in the conduct Dutton described just because the Kentucky Bar Association (KBA) declined to discipline him and he was not criminally charged. Shaffer acknowledged on behalf

of the JCC that Tomlinson's conduct would qualify as theft if he was not entitled to the money, that Shaffer had seen the documents indicating that Tomlinson diverted or kept for himself client fees or escrow funds, and that the absence of an investigation or of criminal charges does not mean that no theft occurred. The JCC's attempt to enforce Rule 4.1(A)(11) against Dutton was unconstitutional. *See Winter*, 834 F.3d at 693; *Brown*, 456 U.S. at 60–61; *O'Toole*, 802 F.3d at 789.

Moreover, the JCC could not constitutionally enforce Rule 4.1(A)(11) against Dutton for stating that Tomlinson "also happens to practice law with [her] opponent" in the election because this statement was also "readily capable of a true interpretation[.]" *See* DE 1-4, Newspaper Article, Page ID 24; *Winter*, 834 F.3d at 693. The JCC has stated that it sought to enforce the Rule against Dutton because Tomlinson did not "*practice law*" with Cypert. *See* DE 1-5, JCC 2023 Letter, Page ID 25 (emphasis added); *accord* DE 1-7, JCC Proposed Agreed Order, Page ID 48; DE 42, Depo. Tr. Shaffer, Page ID 678–80, 689–90.

Dutton alleged that Tomlinson "practiced law with" Cypert, as they shared office space, shared secretarial staff, and covered hearings for each other from "time to time." *See* DE 31, Verified Am. Compl., Page ID 326. And Mr. Dutton stated that he believed Tomlinson was in an office-sharing arrangement or a casual attorney association with Cypert at the time that Mr. Dutton fired him, Tomlinson had worked there since he was fired, and Tomlinson and Cypert shared office space, worked together, or were associated together in one office. DE 34-1, Aff. Decl. C. Gilmore Dutton III, Page ID 371–72.

The JCC's basis for claiming that Tomlinson and Cypert did not practice law together is unclear. Its Proposed Agreed Order indicated that the two attorneys "operated separate practices and kept separate office spaces," and that Dutton misrepresented their relationship in a "transparent effort to inappropriately fabricate a conspiracy in furtherance of her election objectives . . . to downplay the severity of her prior misconduct." DE 1-7, JCC Proposed Agreed Order, Page ID 48. Shaffer acknowledged that the two attorneys shared office space but asserted that sharing office space cannot reasonably be understood as practicing law because some attorneys share a space without practicing together. Shaffer also acknowledged that there are no grounds to dispute that Tomlinson shared office space and support staff with Cypert, and that she

did not know whether there was any reason to dispute that Tomlinson and Cypert occasionally covered cases for each other. The JCC labeled Dutton's statement as a false statement of material fact because it disagreed with the term that Dutton used to describe two attorneys sharing office space and covering the same cases—not because Dutton's factual bases were incorrect.

Yet the JCC's disagreement with Dutton's choice of words cannot remove her speech from the First Amendment's range of protection because disagreement is not evidence of falsity. Shaffer and the JCC adduced no facts besides their own Order's language that the two attorneys were *not* practicing law together. Shaffer did not dispute that the attorneys shared space and resources and that she did not know whether they covered cases for each other. In our view, Dutton's claim that two lawyers who share office space, support staff, *and* case-related duties are practicing law together is "readily capable of a true interpretation[.]" *See Winter*, 834 F.3d at 693. What qualifies as "practicing law" depends on the relevant definition but Shaffer noted that the JCC has no such definition. DE 42, Depo. Tr. Shaffer, Page ID 680. And while Shaffer noted that such an inquiry would be "fact specific," she marshaled no facts to support the JCC's position. *Id.* The JCC cannot enforce Rule 4.1(A)(11) against Dutton for stating that the lawyers practiced law together because the record reflects that the statement was "readily capable of a true interpretation," as the JCC has advanced insufficient evidence of falsity. *See Winter*, 834 F.3d at 693.

The JCC also impermissibly attempted to enforce Rule 4.1(A)(11) against Dutton for stating that no litigants were affected by her actions and only she was hurt. Her assertions were not statements of fact subject to Rule 4.1(A)(11)—they were opinions and thus outside the Rule's reach. *See* DE 1-4, Newspaper Article, Page ID 24; DE 42-7, Rule 4.1, Page ID 718; *see also Winter*, 834 F.3d at 694 ("But only a ban on *conscious falsehoods* satisfies strict scrutiny." (emphasis added)). And to the extent that Dutton's statement implied assertions of fact regarding the people affected and hurt by her disciplinary misconduct, those assertions were capable of a "true interpretation" and not false on this record. *See Winter*, 834 F.3d at 693; *Berry*, 688 F.3d at 303 ("An opinion can 'be the basis for sanctions only if it could reasonably be

understood as declaring or implying actual facts capable of being proved true or false.'" (quoting *Yagman*, 55 F.3d at 1438–39)).

When Carter appeared with counsel for the first time on July 18, 2019, he had already requested that Dutton recuse herself. Dutton recused herself that same day—only a "couple of hours" later. DE 41, Depo. Tr. Donna Dutton, Page ID 479. After Dutton's recusal, Carter's case was re-docketed for a week later; and on that date, the new judge imposed a sentence of six months deferred and scheduled a review in the case for January 23, 2020. Dutton asserted that it was not clear that Carter's "case would have been resolved—or [his] bond conditions modified—earlier but for Judge Dutton's conduct," and that his case was not delayed because of her recusal. DE 1-6, Response to JCC Letter, Page ID 32.

Shaffer stated that the "only litigant" who could have been affected by a delay in recusal was Carter. DE 42, Depo. Tr. Shaffer, Page ID 686–87. The JCC thus labeled as false Dutton's statement that no litigants were "affected" and only she was "hurt," DE 1-4, Newspaper Article, Page ID 24, because Dutton's actions "delayed resolution" of Carter's case and "caused him to live and work under bond conditions longer than necessary." DE 1-5, JCC 2023 Letter, Page ID 25; *see* DE 39, Defs.' Mot. for Summ. Judgment, Page ID 421–22.

The record does not support the JCC's claim because there is no evidence that Dutton's actions delayed the resolution of Carter's case. First, the JCC specifically stated that Dutton failed to recuse herself. But Shaffer conceded that Dutton "recused [herself] the same day" Carter requested that she do so. DE 42, Depo. Tr. Shaffer, Page ID 696. So there is no evidence that Dutton's failure to recuse herself affected or hurt Carter. And although Shaffer noted that Dutton failed to "immediately" recuse herself, Shaffer stated that the outcome in Carter's case would not have changed whether Dutton "recused [herself] at the hearing or several hours later[.]" *Id.* at 667, 683. The JCC defendants presented no evidence that the few hours that Dutton took to recuse herself affected or hurt Mr. Carter. And the JCC advanced no evidence that Carter's case would have been resolved earlier or his bond conditions would have been shorter had Dutton recused herself sooner. To the extent that Dutton's assertions implied statements of fact, they implied statements "readily capable of a true interpretation[.]" *See Winter*, 834 F.3d at 693; *Berry*, 688 F.3d at 303.

Therefore, we agree with the district court's conclusion that the JCC's enforcement of Rule 4.1(A)(11) against Dutton's speech failed to give Dutton the requisite "breathing space" to exercise her First Amendment rights. *See* DE 52, Op. & Order, Page ID 851 (internal quotation marks omitted) (quoting *Brown*, 456 U.S. at 61).

**D.**

We disagree with the district court's conclusion that Dutton failed to carry her burden on her as-applied challenges to the JCC's enforcement of Rules 1.2 and 2.4(B). Dutton carried her burden at summary judgment of showing that the JCC sought to enforce Rules 1.2 and 2.4(B) against statements that were "readily capable of a true interpretation[.]" *See Winter*, 834 F.3d at 693. And we conclude that the defendants, as cross-movants for summary judgment, failed to carry their burden of showing that their enforcement withstands strict scrutiny review under the First Amendment.

The JCC's Proposed Agreed Order concluded that Dutton violated Rules 1.2 and 2.4(B). And at summary judgment, the defendants likewise maintained that Dutton violated Rules 1.2 and 2.4(B) because she made materially false statements. The district court stated that Dutton did not explain how the enforcement of Rules 1.2 and 2.4(B) burdened her free speech rights. It noted that it was required to draw "all reasonable inferences against the party whose motion is under consideration," Dutton bore the burden at summary judgment, and she did not address why those Rules were unconstitutionally applied to her speech. DE 52, Op. & Order, Page ID 848–49. Yet the court failed to evaluate Dutton's arguments and to apply summary-judgment standards to the defendants as cross-movants. *See Taft Broad. Co.*, 929 F.2d at 248. And in concluding that the defendants "passed strict scrutiny under both rules," the court failed to ask whether their *application* of the Rules passed strict scrutiny—it asked only whether their *text* did. DE 52, Op. & Order, Page ID 843, 849; *see N.Y. State Club Ass'n v. City of N.Y.*, 487 U.S. 1, 14 (1988) (stating that *facial* overbreadth challenges require a showing from the law's "text" that the law cannot be applied constitutionally in a substantial number of instances).

The defendants claimed that they were entitled to summary judgment because Dutton's "statements were materially false," so Dutton violated her obligation to the judiciary's values

under Rule 1.2 and her obligation to refrain from allowing personal relationships to interfere with her role under Rule 2.4(B).  DE 39, Defs.' Mot. for Summ. Judgment, Page ID 423–25. Notably, the defendants staked their enforcement's constitutionality on the theory that Dutton made "statements that are consciously false with the intention of deceiving the public" and those "materially false statements" were "an affront" to the judiciary.  *See id.* at 424–25.  Yet they did not articulate in their warning letter, Proposed Agreed Order, or motion papers a single alternative basis why Dutton's statements ran afoul of Rules 1.2 and 2.4(B).  At its core, their justification for enforcement was that both "Rules 1.2 and 2.4(B) *essentially rise and fall with these materially false statements*."  *Id.* at 425 (emphasis added); *accord* CA6 R. 22, Defs.' Br., Page ID 26–27 ("Rules 1.2 and 2.4(B) have cascading application . . . .  Both Rules 1.2 and 2.4(B) essentially rise and fall contingently with underlying misconduct—if misconduct occurred, these Rules are implicated.").

The defendants' lone justification for enforcing Rules 1.2 and 2.4(B) lacked any evidentiary support.  As we explained in our analysis of Dutton's as-applied challenge to Rule 4.1(A)(11), the record does not support the defendants' claims that Dutton's statements were false.  Because no evidence sustains the defendants' sole predicate for enforcing Rules 1.2 and 2.4(B) against Dutton, the defendants failed to establish the absence of a genuine issue of material fact regarding the constitutionality of Rules 1.2 and 2.4(B) as applied to Dutton and they were not entitled to judgment as a matter of law.

We hold that the JCC's application of Rules 1.2 and 2.4(B) to Dutton's speech fails strict scrutiny review.  The JCC sought to enforce the Rules against speech that was "readily capable of a true interpretation" without evidence of falsity and the JCC provided no alternative, factually supported basis on which to enforce the Rules against Dutton.  *See Winter*, 834 F.3d at 693.  The defendants cannot sidestep the First Amendment's limits on enforcing a false statements prohibition against statements that are "readily capable of a true interpretation" by applying other rules to that same speech without an independent basis for enforcement.  *See id.*

Dutton, on the other hand, carried her burden at summary judgment.  She explained that the defendants applied Rules 1.2 and 2.4(B) to her statements on the basis that they were false, but her statements were not false, and the defendants could not constitutionally enforce these

prohibitions against statements "'readily capable of a true interpretation.'" DE 34, Pl.'s Mot. for Summ. Judgment, Page ID 359–64 (quoting *Winter*, 834 F.3d at 693). Because she showed that the defendants attempted to enforce Rules 1.2 and 2.4(B) against statements protected under *Winter* without an alternative basis for those Rules' application, Dutton established that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law on her as-applied challenges to Rules 1.2 and 2.4(B).

We need not reach Dutton's facial challenges to Rules 4.1(A)(11), 1.2, and 2.4(B) because she is entitled to summary judgment on her three as-applied challenges. *See Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 570–71 (6th Cir. 2012); *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484–85 (1989).

**E.**

The standard for a permanent injunction is "essentially the same" as for a preliminary injunction, but a plaintiff must show "actual success"—not a mere "likelihood of success on the merits[.]" *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987); *see Am. C.L. Union of Ky. v. McCreary County*, 607 F.3d 439, 445 (6th Cir. 2010). The movant must also show that the absence of an injunction will likely "result in irreparable harm." *Kallstrom*, 136 F.3d at 1068. We presume irreparable injury when "constitutional rights are threatened or impaired[.]" *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *accord Am. C.L. Union of Ky. v. McCreary County*, 354 F.3d 438, 445 (6th Cir. 2003). The injunction must also not cause "substantial harm to others" and it must serve the public interest. *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (per curiam) (en banc).

The district court properly granted Dutton a permanent injunction based on her as-applied challenge to Rule 4.1(A)(11), but it abused its discretion because it improperly applied the law in denying her the same relief based on her as-applied challenges to Rules 1.2 and 2.4(B). *See Herman Miller, Inc.*, 270 F.3d at 317. Dutton showed that the JCC's enforcement of all three Rules as applied to her speech violated her constitutional rights, so she established actual success. *See Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). And it is "well-settled" that even short deprivations of First Amendment freedoms "unquestionably

constitute[] irreparable injury," so Dutton has established irreparable harm because the defendants violated her free speech rights. *See id.* (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)).

Moreover, the entry of a permanent injunction enjoining the application of the Rules to Dutton's speech poses no harm to the public. And while the JCC has an interest in constitutionally enforcing the KCJC, it suffers no harm from our preventing its unconstitutional enforcement of the Rules. *See Connection Distrib. Co.*, 154 F.3d at 288. Finally, it is "always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994); *accord Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995). Dutton is entitled to a permanent injunction enjoining the enforcement of Rules 4.1(A)(11), 1.2, and 2.4(B) as applied to her speech.

## V.

For the foregoing reasons, we affirm the district court's grant of partial summary judgment to Dutton based on her as-applied challenge to Rule 4.1(A)(11) and affirm its entry of a permanent injunction enjoining the JCC's enforcement of Rule 4.1(A)(11) against Dutton. We reverse the district court's grant of partial summary judgment to the JCC with respect to its enforcement of Rules 1.2 and 2.4(B) against Dutton and reverse its denial of a permanent injunction enjoining the JCC's enforcement of Rules 1.2 and 2.4(B). On remand, the district court is ordered to grant summary judgment to Dutton based on her as-applied challenges to Rules 1.2 and 2.4(B) and enter a permanent injunction enjoining the JCC's enforcement of those Rules against Dutton.